Argued May 4, opinion affirmed August 1, 1978

# CLOYD, *Appellant,*
*v.*
# McPHERSON, *Respondent.*
## (TC 99118, SC 25566)
582 P2d 423

Norman K. Winslow, of Winslow & Kaffun, Salem, argued the cause and filed a brief for appellant.

J. Michael Alexander, of Brown, Burt & Swanson, P.C., Salem, argued the cause and filed a brief for respondent.

Before Denecke, Chief Justice, and Tongue and Linde, Justices, and Tanzer, Justice Pro Tempore.

TONGUE, J.

**TONGUE, J.**

This is a suit to foreclose a mechanic's lien placed upon defendant's property by plaintiff, a contractor who performed extensive alterations and repairs upon the property. Plaintiff alleged that he was entitled to payment of a balance due for work performed under a contract between the parties and also for work performed for "extras" in addition to the work required by that contract. Defendant alleged that all sums due under the contract had been paid or tendered and that the parties had agreed that all but approximately $200 of the "extras" would be offset by the fact that some of the work to be performed under the contract had been done in a "substandard" manner. The trial court denied foreclosure of the mechanic's lien, awarded plaintiff $200, and also awarded $1,000 in attorney fees to defendant as the "prevailing party." We affirm.

This being an appeal in a suit in equity, it is to be "tried anew upon the record." ORS 19.125(3). Because there are conflicts in the testimony, however, we give considerable weight to the findings of the trial judge, who was in a better position to assess the credibility of the witnesses. *Cf. Almond v. Anderegg,* 276 Or 1041, 1043, 557 P2d 220 (1976); *Adamson v. Adamson,* 273 Or 382, 389, 541 P2d 460 (1975). We note that the trial court, in a letter opinion, stated:

> "* * * Generally speaking, the defendant's testimony was more convincing than that of the plaintiff, and most of [defendant's] testimony was aptly [sic] corroborated by other witnesses and exhibit."

Defendant owned an older residence in an area of the city of Salem subject to an urban renewal program under which defendant was able to obtain a low interest loan for the rehabilitation of the property. Under this program the city inspects the property and prepares a written list of the requirements for the rehabilitation of the property. The work is then put out for bids and the successful bidder and the owner enter into a written contract for the performance of that work.

Plaintiff was the successful bidder for the rehabilitation of defendant's property. The bid for the work to be performed was $17,500.50 and a written agreement describing that work was prepared and signed. On January 20, 1977, plaintiff filed a mechanic's lien, attaching a copy of a letter he had written to defendant demanding payment for certain extra work allegedly requested by defendant. The amount of the mechanic's lien included the contract price of $17,500.50, plus "extras" in the sum of $2,279.06, less payments made and credited. There is no dispute about defendant's responsibility to pay the contract price.

Defendant testified that she had authorized payment to plaintiff of the balance due for work to be performed under the contract, but that plaintiff refused to accept such payment unless he was also paid for the "extras" for which he also claimed payment. Plaintiff offered evidence to prove the cost of the various items of "extra" work.

There is no contention by defendant that these "extras" were part of the original written agreement. Defendant's contention, however, is that she agreed to pay only for certain minor "extras" totaling approximately $200 and that plaintiff agreed to absorb the costs of the other "extras" in consideration for defendant's forgiveness of various deficiencies in plaintiff's performance of work to be done under the contract. She testified as follows:

"Q   Are you aware of a list of extra charges that Mr. Cloyd has presented?
"A   I am.
"Q   When were you first presented with the extra charges?
"A   Mr. Cloyd finished his work at the home in about the second week of December. It was after Christmas that he came to my home and sat down with me in the front room and things looked pretty good. Then he opened up a paper and handed it to me and I sat down in shock because it was a list of items which he was making

[ 140 ]

claim for, among which were those I had said I would pay him for.

"Q Now may the witness be handed Plaintiff's Exhibit 19? [Letter of December 31, 1976.]

"Now, when he presented you with this list of extras, did it include the same extras that are included on Plaintiff's Exhibit #19 that you have there in your hand?

"A Yes, the only difference is that it merely listed the items. It didn't contain all the extra verbiage and vitriolic sentences.

"Q When he presented you with this list of extras what was the crux of the conversation that took place?

"A Well, I said to Mr. Cloyd, 'George, it was my understanding that because I was accepting sub-standard—substitution of materials and lesser grade of work that you would allow me to have the extras which we talked about from the very beginning,' and Mr. Cloyd said to me, 'Well, I haven't made a bit of money on the job. I have to make something on this. I have done everything you wanted me to, now I have to make some money.' And I said to him, 'George, from the very beginning and throughout our conversation, I told you the things that I would pay for because they were outside what I expected you to do and I will pay for those things but that's all.' I handed him the paper and he left.

"Q What were those things that you agreed to pay for?

"A The underlayment for the floor, because the carpet would not have maintained any quality without the underlayment and he felt it would and I felt it wouldn't, because the carpet-layers told me it wouldn't stand up under a guarantee. I said I would pay for the underlayment.

"The upstairs needed to be insulated because it was bare wall. All my heat would be lost through the ceiling. I said I would pay for the insulation cost for the upstairs and the drainline that was broken in the basement when it was removed. I said I would—because that was an unforeseen cost, I said I would assume the cost for that and the Lazy Susan that was installed at my request in the cabinets.

"Q As far as the drainline, you wanted to pay for the material costs?

"A   The material costs only.

"Q   And did you offer to pay for those items at the time you met with Mr. Cloyd?

"A   Yes.

"Q   And did you have resources with which to pay those items at that time?

"A   I did.

"* * * * *."

Plaintiff denied any such agreement.

■ As previously stated, the trial court found that defendant's testimony was more convincing and resolved the dispute in her favor. After examining the entire record, we agree that defendant's testimony was also corroborated. One witness testified that there were substantial deficiences in plaintiff's performance and that in his opinion it would cost $2,422.03 to correct them. One of the "deficiencies" was the use of fir for the decking of a porch instead of redwood, as called for in the written contract. Defendant's son testified that plaintiff told him that "if we put in fir in the place of redwood that he would try to make up the difference somewhere else throughout the house." We also believe defendant's testimony is corroborated by the fact she has never demanded payment or performance from plaintiff to correct the deficiencies, but has consistently maintained that the "deficiencies" were to be offset by the "extras."

■ We also agree with the trial court in denying foreclosure of the mechanic's lien for the unpaid balance under the contract. That payment was not to be made directly by defendant, but was to be made from funds which were to be released for payment after inspection of the work by the city and authorization of payment by the defendant. Defendant testified that she authorized payment by the city of such funds. It may be, as testified by plaintiff, that defendant did not do so in writing, as required before such a disbursement could be made. Defendant, however, called witnesses to corroborate her testimony that she

not only offered to authorize the release of such funds, and also offered to pay for some of the extras, but that plaintiff had failed to submit a final billing, as also required before payment could be made, taking the position that he would not accept the final payment "unless he could get the extras." Under these facts plaintiff was not entitled to a foreclosure of his lien. *Cf. Zanello & Son v. Portland etc. Co.,* 70 Or 69, 78-79, 139 P 572 (1914). *See also* 57 CJS, Mechanics' Liens § 229 (1948).

■ Plaintiff next contends that the trial court erred in determining that the defendant, and not the plaintiff, was the prevailing party and in awarding the defendant attorney fees. ORS 87.060(4) provides that:

"* * * In suits to enforce a lien created by ORS 87.010 the court shall allow as a part of the costs a reasonable amount as attorney fees to the prevailing party, * * *."

ORS 20.180 provides:

"When in any action or suit for the recovery of money or damages only, the defendant shall allege in his answer that before the commencement thereof he tendered to the plaintiff a certain amount of money in full payment or satisfaction of the cause, and now brings the same into court and deposits it with the clerk for the plaintiff, if such allegation of tender is found true, and the plaintiff does not recover a greater sum than the amount so tendered, he shall not recover costs off the defendant, but the defendant shall recover them off him."

Defendant's second amended answer alleged that:

"Defendant denies Plaintiff's claim for any additional services and materials, as outlined in Exhibit 'A' to his Line, with the exception that Defendant admits owing the cost of the drain line described in Item 10, the cost of material described in Item 11, the cost of material described in Item 3, and the cost of the lazy susan described in Item 2. Defendant has always stood ready to pay said sums, and although lacking sufficient information and belief to ascertain the exact amounts due and owing, has tendered the sum of $200.00 to cover such charges."

Defendant made no formal tender of $200 before the commencement of this suit. As previously stated, however, she offered to pay for some of the "extras" and plaintiff made it clear that he would not accept such a payment unless paid in full for all of the "extras," as demanded by him. Under these facts a formal tender would have been futile and was not required. *See Clarno v. Grayson,* 30 Or 111, 126, 46 P 426 (1896).

On October 12, 1977, the day of trial, defendant paid into court the sum of $200. The plaintiff did not recover a greater sum than the amount tendered. Under these facts, we hold that defendant was the prevailing party and was entitled to recover her costs from the plaintiff by reason of ORS 20.180, including attorney fees as provided by ORS 87.060(4).[1]

■ Finally, plaintiff contends that the trial court erred in refusing to allow him to testify to a conversation with defendant's son. That testimony was offered for

---

[1] *Equitable Life Assur. Soc. v. Boothe,* 160 Or 679, 86 P2d 960 (1939), cited by plaintiff, is distinguishable. In that case plaintiff sought to foreclose a mortgage on real property executed by defendant's grantors to secure payment of a promissory note to plaintiff's assignor. By its terms the mortgage stated that in case suit or action was brought to enforce collection of the note or mortgage, the mortgagors would pay such sum or amount as the court shall adjudge reasonable as attorney fees. Plaintiff's complaint alleged that there was due and owing $4,850 as principal and interest and that $450 was a reasonable sum to be allowed as attorney fees in the suit.

A few days after the suit had been commenced, defendants offered to pay plaintiff in full satisfaction and discharge of the mortgage the sum of $4,850, together with accrued interests and costs of suit, but refused to pay any sum as attorney fees. Because of this refusal the offer was rejected.

This court affirmed the decree in favor of plaintiff, including $450 attorney fees, holding that defendant's offer was not a defense because a tender of money is not a good tender unless the money is deposited into court for the benefit of the other party. This court went on to state in dictum that even if properly deposited the tender would have been insufficient because the suit having been commenced the right to payment of attorney fees had accrued and was part of the amount.

In this case, no formal tender of $200 was required because of plaintiff making it clear that such a tender would have been futile, as previously stated. In addition, the right to attorney fees in this case was derived from ORS 87.060(4), not from a contract between the parties, as in that case. *Cf. Gorman v. Boyer,* 274 Or 467, 547 P2d 123 (1976).

the purpose of impeachment of defendant's son who had been previously asked on cross-examination whether he told plaintiff that his mother did not intend that plaintiff make "any profit on the job" and had replied in the negative.

The statement sought to be elicited would appear to be collateral to the issues of the case so as to make impeachment by proof of an alleged prior inconsistent statement improper. *Coles v. Harsch,* 129 Or 11, 18, 276 P 248 (1929). In any event, there was no jury in this case and, on this trial de novo, we hold that any such error was harmless.

For all of these reasons, the decree of the trial court is affirmed.