Argued and submitted October 31, 1980, affirmed January 26,
reconsideration denied March 4,
petition for review denied April 21, 1981 (290 Or 853)

DAVISON,
*Plaintiff-Appellant,*

*v.*

PARKER et al,
*Defendants-Respondents,*

DAVISON,
*Third Party Plaintiff-Respondent.*

*v.*

BULL et al,
*Third Party Defendants-Appellants.*

(No. 78-611E, CA 16519)

622 P2d 1113

Clayton C. Patrick, Salem, argued the cause and filed the brief for plaintiff-appellant.

K. Patrick Neill, Eugene, argued the cause for third party defendants-appellants. With him on the briefs was Hershner, Hunter, Miller, Moulton & Andrews, Eugene.

Wally P. Martin, Grants Pass, argued the cause for defendants-respondents. With him on the brief was Martin and Wolke, Grants Pass.

Clayton C. Patrick, Salem, argued the cause and filed the brief for third party plaintiff-respondent.

Before Richardson, Presiding Judge, and Thornton and Buttler, Judges.

THORNTON, J.

## THORNTON, J.

Plaintiff Davison brought this suit to foreclose a construction lien and to recover the price of concrete sewer pipe sold to defendants Parker and Big "D" Developers, Inc. ORS 87.060. (Defendants Dan and Kathleen Parker are former sole shareholders of Big "D" Developers, Inc., which has been dissolved since the events in question occurred and whose debts the Parkers assumed.) Defendants interposed a counterclaim that some of the pipe delivered to them was not merchantable in that it cracked after installation and required replacement. Plaintiff then brought a third-party complaint against third-party defendants Bull and Eugene Concrete Pipe Co., who do business as Salem Concrete Pipe Co. and who manufactured the pipe in question. The third-party complaint alleged that, if plaintiff were held liable to defendants for defective pipe, those damages should properly be passed on to third-party defendants.[1]

The lawsuits were tried in the same proceeding. Third-party defendants stipulated that, in the event plaintiff were found liable to defendant for unmerchantable pipe, they would be responsible as manufacturers of the pipe. The trial court entered a judgment for defendants on their counterclaim and awarded as damages the cost of locating and replacing the defective pipe, with credit to plaintiff for good pipe delivered. The court also awarded defendants $2,065 in attorney fees and costs. ORS 87.060(4). A separate decree was entered in favor of plaintiff on his third-party complaint and the full amount of the judgment including attorney fees and costs was passed along to third-party defendants.

Plaintiff and third-party defendants appeal, assigning as errors the following:

1) the holding that the pipe was defective;

2) the receipt in evidence of a summary prepared from time cards of the costs of replacing the pipe; and

---

[1] Defendants Valley of the Rogue Bank and Transamerica Title Insurance Company financed defendants' development project. They filed no appearance and are not involved in this appeal.

3) failure to hold that proof of damages was otherwise insufficient.

Third-party defendants appeal separately, contending that the trial court should not have passed on to them the attorney fees and costs entered on defendants' counterclaim against plaintiff.

Defendants purchased 8 inch and 4 inch pipe from plaintiff for use in the subdivision they were constructing. Parker testified that he employed experienced people to install the sewer lines and that they did so in the normal manner. When the lateral lines (consisting of the 4 inch pipe) were installed and pressure tested, they failed to function. The lines were dug up piecemeal and about one out of three sections of pipe was found to have cracked around the circumference at about the middle of the pipe. This pipe was replaced by other pipe from the same lot, some of which broke upon installation and testing without being buried. Neither plaintiff nor defendants understood at the time what had caused the pipe to fail. Everyone who handled the pipe testified that it appeared normal in every way and that no cracks were visible. The pipe did not break upon being laid in the trench. Plaintiff was notified of the problem and personally inspected some of the laterals. Defendant Parker testified that plaintiff remarked that there appeared to be nothing wrong with the way the pipe was installed.

Third-party defendants contend, however, and seek to support the contention through expert testimony, that the pipe broke either because of the manner in which the pipe was imbedded or because of excessive "tamping" (the process of mechanically compacting the gravel and earth backfill covering the sewer line). They tested several pieces of pipe, some of which had been used by defendants, and they all measured up to industry standards. The expert expressed the opinion that the type of break (a crack around the circumference) was indicative of shearing rather than crushing. Shearing, he testified, was more probably the result of poor installation rather than a defect in the pipe itself. Such a result could come about if the 4 to 6 inch gravel bed upon which the pipe rests was not hollowed to accommodate the bell ends of the pipe. The consequence of making this gravel bed perfectly level is to

elevate the center section of the pipe by an inch or two which may cause it to shear somewhere near the middle of the length when it is covered and tamped.

■■ Plaintiff argues that the preponderance of the evidence shows that the most probable cause of the pipe failure was improper installation and that defendants therefore failed to carry their burden of proving that their damages were the product of any defect in the pipe itself. The question of causation is one of fact and defendants had the burden of establishing with reasonable certainty that, of the possible causes of the pipe failure, it was most probable that the cause was one within plaintiff's control and was not due to defendants' own error. *Valley Inland Pac. Constructors v. Clackamas Water Dist.,* 43 Or App 527, 532-33, 603 P2d 1381 (1979). Where the alleged cause of failure involves a latent defect, as in this case, a party may prove circumstantially that a defect existed by showing it used the product in the normal manner. *Controltek, Inc. v. Kwikee Enterprises, Inc.,* 284 Or 123, 130-31, 585 P2d 670 (1978).

■ Inasmuch as the merchantability counterclaim was filed in an equitable proceeding (i.e., foreclosure of a construction lien) and neither party attempted, upon conclusion of plaintiff's proof with respect to the validity of this lien, to have the balance of the case transferred to the law side of the court, we review the entire matter *de novo. Allan & Leuthold v. Terra Inv.,* 271 Or 335, 337-39, 532 P2d 218 (1975). We conclude, as did the trial court, that there is no evidence that defendants improperly installed the pipe and, although the matter is not entirely free from doubt, it appears more likely that failure was due to some defect in the pipe. The fact that some of the replacement pipe, which was pressure-tested before it was buried and tamped, developed cracks similar to the original pipe weighs heavily in favor of this conclusion. That defendants might have tamped the lines more than usual is explained by the fact that the tamping machine was old and not very powerful. In any event, it would appear to us that overtamping would more likely produce a crushing rather than a shearing failure.

Defendants introduced a summary of the time its employes spent in replacing the defective pipe. This summary was prepared by defendants' part-time bookkeeper under the supervision of defendant Parker. He testified that he was directly involved to some degree in its preparation, answered the bookkeeper's questions and spot-checked the results. Plaintiff contends that the summary should not have been received because defendants failed to lay a proper foundation for receipt of the evidence since Parker had not personally compiled the summary nor checked the results thoroughly enough and because the time cards themselves were not available in the courtroom to provide a source for cross-examination. The bookkeeper herself was out of state and not available to testify.

■ ■    ORS 41.640(1)(e) permits introduction of summary evidence

> "[w]hen the originals consist of numerous accounts, or other documents, which cannot be examined in court without great loss of time, and the evidence sought from them is only the general result of the whole."

The time cards in question are business records, admissible under ORS 41.690.[2] The trial court is vested with a large measure of discretion in determining whether the sources of the information and the manner in which the summary was prepared justify admission of the document. *Stanfield v. Laccoarce,* 284 Or 651, 664, 588 P2d 1271 (1979). We find no abuse of discretion here. The records were prepared on a daily basis by defendants' employes to keep track of time spent on various aspects of various jobs. Parker, as president of Big "D" Developers, Inc. and by virtue of his role in supervising preparation of the summary, was qualified to identify it and testify to the mode of preparation. It was prepared by pulling out those notations of time which either expressly referred to replacement of the pipe or

---

[2] ORS 41.690:

"A record of an act, condition or event, shall, in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission."

which could be attributed to that task by reference to the description of the work performed. The fact that some errors may have been made by defendants' employes in noting their time does not affect the overall reliability of the time cards as a source of information absent a showing that such errors were pervasive. The foundation was sufficient to render the summary admissible. ORS 41.690; *Gen. Constr. v. Ore. Fish Com.,* 26 Or App 577, 589-90, 554 P2d 185 (1976).

■　　It further appears that, although the time cards were not produced at trial, defendants had sent copies to plaintiff and third-party defendants prior to trial. The trial court suggested a continuance to obtain the records, but none of the parties responded. We conclude that any right plaintiff may have had to require production of the time cards themselves was waived.

■　　Plaintiff next argues that, even if the summary is admissible, proof of damages is insufficient. Some of plaintiff's arguments go to the reliability of the data shown on the time cards and are disposed of by our holding with respect to the previous assignment of error. They also argue that defendants failed to mitigate damages by not checking for cracked pipe by means of a smoke method, which plaintiff's expert testified would have been cheaper than the method employed by defendants. There was no evidence, however, that the advantages of such a test were communicated to defendants nor that defendants' pressure-testing method, which identified the defective pipe by the process of elimination, was unreasonable. The proof of damages was otherwise sufficient.

Finally, plaintiff argues that defendants' costs of replacing the pipe are exorbitant and point to testimony of defendants' supervisor that he would bid $3,600 to replace all the laterals, as opposed to the $8,505.15 actually awarded in damages. The evidence was that defendants proceeded as they did because they were uncertain as to the extent of malfunction and did not wish to dig up any more pipe than necessary to repair the lateral lines. They were also required to spend extra supervisory time discussing and attempting to resolve the problem and to purchase

extra materials. It is not clear that the supervisor's estimate included these costs. It does not appear to us that defendant proceeded unreasonably in attempting to rectify the problem piecemeal. Plaintiff offers no other evidence to rebut defendant's statement of expenses, and we can find no other basis in the record for concluding that the costs are exorbitant.

Third-party defendants stipulated at the beginning of trial that they were responsible for any manufacturing defect in the pipe. The pertinent parts of the stipulation are as follows:

" * * * To expedite this matter we are willing to stipulate that if it's determined that the problem with the pipe was caused by a manufacturer's defect, manufacturing defect [sic], and that damages are awarded as a result of that manufacturing defect, that third party plaintiff may recover against third party defendants for that amount * * *. We are not stipulating necessarily as to the amount of those damages. I guess the main thing that I want to make clear * * * is that we're not stipulating that they can recover all costs or damages they might incur in connection with their lien foreclosure with regard to damages that might be awarded in connection with manufacturer's defects, they would not have put on [sic] evidence to establish the right to pass that through to the manufacturer, the third party defendants."

Third-party defendants argue on appeal that the attorney fees awarded to defendants were only a result of the fact that plaintiff had sought to foreclose his lien. In suits to foreclose construction liens, attorney fees are available as part of costs to the prevailing party. ORS 87.060(4). Although the judgment entered in defendants' favor gave plaintiff credit at the contract rate for good pipe and, in that sense, amounted to a foreclosure of the lien, all parties concede that defendants are the prevailing party and entitled to attorney fees. *See Cloyd v.McPherson,* 283 Or 137, 143-44, 582 P2d 423 (1978). Had defendants brought an original action against plaintiff on the breach of warranty claim, there would have been no statutory right to recover attorney fees.

■■ This is apparently a case of first impression in Oregon. Assuming the stipulation, which is somewhat

confusing,[3] extends only to the actual monetary damages sustained in replacing defective pipe, we conclude nevertheless that the trial court was correct in charging third-party defendants with the attorney fees and costs awarded defendants. The third-party complaint alleges a cause of action in the nature of common law indemnity. Where a retailer delivers goods to a buyer without creating a defect in the product, it is only secondarily liable for that defect and is entitled to indemnity from the manufacturer. *Smith Radio v. Challenger Equipment,* 270 Or 322, 325-26, 527 P2d 711 (1974). Third-party defendants conceded their liability in this respect.

Normally in an indemnity situation the indemnitee tenders defense of the cause to the indemnitor. Here plaintiff (the indemnitee) had an interest in the proceeding above and beyond the unmerchantability issue—i.e., foreclosure of his lien. Third-party defendants make no contention that defendant should have tendered to them the defense of the counterclaim. They were represented at trial and participated fully.

Neither third-party defendants nor plaintiff raise any objections to the fact that attorney fees were awarded to defendants, or the amount thereof. They do not contend, for example, that only the attorney fees attributable to defense of the lien foreclosure are properly recoverable by defendants under ORS 87.060(4). Neither moved to have the trial of the counterclaim transferred to the law side of the court, which might arguably have precluded reliance on the lien foreclosure statute as authority for the award. Failure to make such a motion constitutes a waiver of the consequences of trying the entire matter in equity as an adjunct of foreclosing the lien. *Allan and Leuthold v. Terra, Inv., supra,* 271 Or at 337; *cf. Welch v. Webb,* 47 Or App 771, 775-76, 615 P2d 391 (1980). The amount of the attorney fees awarded was fixed by the trial court without taking evidence, pursuant to stipulation of all the parties.

---

[3] It might also be read to mean that third-party defendants were reserving only their right to challenge the amount of damages and attorney fees awarded to defendants, not to challenge the transfer to them of whatever damages and costs were eventually awarded. Under this interpretation, as we point out, they would have failed to preserve the question of the transfer on appeal. We have given them the benefit of the doubt.

For purposes of this appeal, it must therefore be assumed that the award of attorney fees to defendants was proper.

The question, therefore, is whether the trial court correctly passed the attorney fees along to the manufacturers. It is clear that plaintiff could have recovered on his lien had it not been for the unmerchantable pipe. In this sense, third-party defendants are responsible for the award of attorney fees to defendants. Plaintiff is entitled to recover any reasonable expenses incurred in defending against defendant's claim. *See St. Paul Fire & Marine v. Crossetti Bros.,* 256 Or 576, 579, 475 P2d 69 (1970).

The attorney fees and costs allowed in the context of this proceeding are such reasonable expenses where the indemnitor could have avoided them by moving to have the counterclaim tried separately but did not.

Affirmed.