Argued and submitted November 15, 1982, affirmed in part, reversed in part and remanded April 13, reconsideration denied May 13, petition for review denied June 29, 1983 (295 Or 259)

DALE'S SAND & GRAVEL CO., INC.,
*Plaintiff-Respondent,*
*Cross-Appellant,*

*v.*

WESTWOOD CONSTRUCTION CO.,
*Defendant-Third Party Plaintiff,*
*Appellant - Cross-Respondent,*

*v.*

LANDAMER REALTY, INC.,
*Third Party Defendant and*
*Third Party Plaintiff-Respondent,*
*Appellant,*

*v.*

WAKER ASSOCIATES, INC.,
*Third Party Defendant,*
*Respondent.*

(No. 39 159, CA A22245)

661 P2d 1378

William F. Thomas, Portland, argued the cause for plaintiff-respondent, cross-appellant, Dale's Sand & Gravel Co., Inc. With him on the briefs was Fred C. Nachtigal, Hillsboro.

Michael B. Wallstein, Portland, argued the cause for defendant-third-party plaintiff, appellant-cross-respondent, Westwood Construction Co.. With him on the briefs was Bernard, Hurley, Crawford & Kneeland, Portland.

James N. Westwood, Portland, argued the cause for third party defendant and third party plaintiff, respondent - appellant, LandAmer Realty, Inc. With him on the briefs were John R. Bakkensen and Miller, Nash, Yerke, Wiener & Hager, Portland.

Katherine O'Neil, Portland, argued the cause for third party defendant, respondent, Waker Associates, Inc. With her on the brief were Kenneth E. Roberts and Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

WARDEN, J.

## WARDEN, J.

This case originated as a suit to foreclose a construction lien. Dale's Sand & Gravel Co., Inc. (Dale's) was a subcontractor that performed excavation and compacting work on a construction project. Instead of suing the owner of the property, LandAmer Realty, Inc. (LandAmer), to foreclose its lien, Dale's sued the general contractor, Westwood Construction Co. (Westwood). Westwood brought a third-party indemnity action against LandAmer, which in turn sought indemnity from Waker Associates, Inc. (Waker), the engineers who prepared the specifications for the project. The trial court refused to foreclose the lien but awarded Dale's a judgment against Westwood for damages on a *quantum meruit* basis, together with pre-judgment interest on the damage award, for extra work done. The trial court also awarded judgment against Westwood in its indemnity action against LandAmer. Westwood appeals from both judgments.[1]

We first must resolve the question of our scope of review. Westwood contends that because the case was initiated as a lien foreclosure, an equitable proceeding, and because the parties never objected to the court sitting in equity hearing all the claims, legal and equitable, our review of the entire matter is *de novo* under ORS 19.125(3). Westwood relies on *Allan & Leuthold v. Terra Inv.,* 271 Or 335, 532 P2d 218 (1975), and *Davison v. Parker,* 50 Or App 129, 622 P2d 1113, *rev den* 290 Or 853 (1981). *Allan & Leuthold* is unpersuasive authority, because it was decided before the amendments to ORS 87.060(2) and (3). *See* Or Laws 1975, chapter 466, § 16. Those sections now read:

> "(2) In suits to enforce the liens created by ORS 87.010, the court shall allow or disallow the lien. If the lien is allowed, the court shall proceed with the foreclosure of the lien and resolve all other pleaded issues. If the lien is disallowed, and a party has made a demand for a jury trial as provided for in subsection (3) of this section, the court shall empanel a jury to decide any issues triable of right by a jury. All other issues in the suit shall be tried by the court.

---

[1] Because we affirm the judgment against Westwood, we need not consider LandAmer's precautionary appeal from the judgment entered against it in its indemnity action against Waker.

"(3)   A party may demand a trial by jury of any issue triable of right by a jury after the lien is disallowed, if that party serves a demand therefor in writing upon the other parties at any time prior to commencement of the trial to foreclose the lien. The demand shall be filed with the court. The failure of a party to serve a demand as required by this subsection shall constitute a waiver by the party of trial by jury. A demand for trial by jury made as provided in this subsection may not be withdrawn without the consent of the parties."

■■   They do not exactly answer the question. The sentence, "[a]ll other issues in the suit shall be tried by the court," leaves unclear whether it refers to a court sitting in equity or law. However, we have relied upon this statute for the proposition that in a case involving a lien foreclosure as well as legal claims, "once the lien has been disallowed the case then continues as an action at law" and that the determination of a legal issue by the court is "the equivalent of a jury verdict." *Betz Construction v. Peterson,* 47 Or App 333, 337, 614 P2d 1184, *rev den* 289 Or 677 (1980). *Allan & Leuthold* is thus no longer controlling. In *Davison v. Parker, supra,* citing *Allan & Leuthold,* we held that a party who fails to move, at the conclusion of the lien proceeding, to have the case transferred to the law side of the court, waives any objection to equity jurisdiction over the legal claims.[2] Motions to transfer a case from law to equity or from equity to law may have made sense at a time when procedure in the two sides differed. *See, e.g., Oregon Farm Bureau v. Thompson,* 235 Or 162, 176, 378 P2d 563, 384 P2d 182 (1963) (opinion on rehearing). Procedural distinctions between law and equity have been abolished by ORCP 2,[3] and a motion to transfer a case from equity to law now has little significance. We therefore adhere to our ruling in *Betz Construction v. Peterson, supra,* that even without a request for a jury, legal claims which have been joined with equitable claims are heard in law and reviewed for substantial evidence, while the equitable claims

---

[2] In *B & D Investment v. Petticord,* 48 Or App 345, 617 P2d 276, *rev den* 290 Or 302 (1980), we cast the question differently. In deciding whether to remand as an action at law after holding that a trial court had erroneously foreclosed a lien, we noted that "there was no affirmative request for a court of equity to retain jurisdiction." 48 Or App at 354, n 2.

[3] The trial in *Davison* antedated the effective date of ORCP 2.

are reviewed *de novo.* In this case, Dale's argues in its cross-appeal only that the trial judge miscalculated the damages awarded, not that its lien was valid and should have been foreclosed. Our scope of review is thus for substantial evidence.[4]

Much of Westwood's appeal is based on its claim that there was insufficient evidence to support the trial court's findings. Westwood and Dale's initially both submitted bids to LandAmer for the construction of streets, storm drains, and water and sewer systems at Stafford Park, a commercial development in Wilsonville. Dale's was the low bidder, but Westwood, which had had previous dealings with LandAmer, was awarded the contract. Westwood then subcontracted with Dale's for six items, for a total price of $49,841.60. Dale's was to perform work involving excavation, grading and compaction of fill materials. Part of the work, item 2.A on bid schedules prepared by Waker and submitted to LandAmer by bidders, was described as "grading, including roadway and channel excavation (approximately 12,000 cubic yards), spread and compacted on site." This language, as well as the project specifications which Waker had prepared for LandAmer, was incorporated into the subcontract between Dale's and Westwood. Unknown to all parties, however, Waker had inadvertently omitted from the specifications a paragraph which required that compaction of placed fill be at least 90 percent, with 95 percent compaction in the upper two feet of all fills.

During construction, an agent of Waker on the site noticed that Dale's was placing fill without compacting it, *i.e.,* Dale's was not using a compactor. The use of heavy equipment, of course, was producing some degree of compaction. Results of a test by a soil engineering firm revealed compaction in the range of 71-78 percent. Waker's mistake in omitting the compaction specification was discovered, but Waker insisted that Dale's perform the compaction anyway, relying on the compaction standards of the

---

[4] Westwood also argues that all parties consented to having the legal actions tried by the court sitting in equity. The cited portion of the transcript, however, reveals only that the parties waived a jury trial. "Failure to [demand a jury trial] constitutes the waiver of a trial by jury but does not constitute a waiver of the parties' right to have the law action tried by the trial court sitting as the trier of fact without a jury." *B & D Investment v. Petticord, supra* 48 Or App at 355.

"Standard Specifications for Public Works Construction" published by the Oregon chapter of the American Public Works Association (APWA), which was referred to in the subcontract. Dale's denied that the subcontract required the compaction. Eventually, at Waker's behest, and with Westwood's knowledge, Dale's removed the placed fill and replaced it with compacted fill. Dale's then sued Westwood to recover payment for the extra work.

The trial court found that the APWA compaction standards did not apply to the subcontract, a finding which Westwood does not contest on appeal. The trial court also found that Westwood, because of prior dealings with LandAmer, "knew all of the purposes of the project," and the degree of compaction that was required and that it was, in effect, taking advantage of Dale's ignorance of the compaction requirement and Dale's resulting low bid to make a profit on the subcontracted work. Thus, the trial court held that Dale's was entitled to recover for the extra work from Westwood, but reduced the recovery, because it found that Dale's had failed to mitigate its damages when it continued to place uncompacted fill after it had learned of the compaction requirement.

The trial court also concluded that LandAmer did not act in any way that would make it contractually liable to Westwood and therefore awarded LandAmer judgment in Westwood's indemnity action against it. Thus, ultimate liability for the compaction cost was placed on Westwood.

■    Westwood's first assignment of error is that there is no evidence to support a finding that it knew more about the compaction requirement than did Dale's. Because Dale's was the prevailing party in the trial, it is entitled to all favorable inferences that may reasonably be drawn from the evidence. *Krause v. Eugene Dodge, Inc.,* 265 Or 486, 509 P2d 1199 (1973). We find that there is evidence, albeit circumstantial, to support the trial court's finding. Westwood's original bid to LandAmer on bid item 2.A was $27,450; Westwood subcontracted with Dale's for performance of the same work for $13,440. Waker's estimate for this bid item (which included the compacting) was $30,000. The owner of LandAmer testified that he had discussed his plans for developing Stafford Park with Miller,

Westwood's owner, and that Miller was excited about the project and anticipated building there himself. The decision to award the contract to Westwood was made because of LandAmer's prior dealing with Westwood. These discussions and prior dealings with Westwood support an inference that Westwood knew that concrete buildings were to be placed on the fill site and that compaction would be required. There is also evidence to support the trial court's finding that Dale's did not know that concrete buildings were to be constructed on the fill.

■ ■ The finding that Westwood knew about the compaction requirement, while Dale's did not, answers Westwood's next assignment — that there is no evidence to support the trial court's finding that LandAmer or its agents did not order Dale's to perform the compaction. It might be implied that Dale's knew of the compaction requirement if the evidence were that such a requirement was in fact already a part of the general contract between LandAmer and Westwood. Because the written agreement between Westwood and Dale's, which the trial judge found did not include compaction, only repeats the language of the written agreement between LandAmer and Westwood, the trial court apparently concluded that the compaction requirement was part of a separate understanding between LandAmer and Westwood. Again, this was a reasonable inference to draw from the evidence of LandAmer's prior dealings and discussions with Westwood. Given the finding that the compaction was Westwood's responsibility under its general contract, it is immaterial to LandAmer's duty to indemnify Westwood whether or not it ordered Dale's to perform the compaction. The evidence supports the trial court's conclusion that LandAmer had no duty to indemnify Westwood.

■ ■ Westwood also assigns as error the trial court's award of pre-judgment interest. Pre-judgment interest on unliquidated damages is proper when the exact amount of damages is either ascertained or readily ascertainable and the time from which the interest runs is easily ascertained. *Krieg v. Union Pacific Land Res. Corp.*, 269 Or 221, 234, 525 P2d 48 (1974). Dale's own brief provides ample evidence that the unit value assigned to the compaction work and the manner of calculating the total value of the work

were not matters of simple computation for the trial court. Indeed, Dale's cross-appeal contests both the unit value and the amount by which the court reduced its recovery because it continued to place uncompacted fill after learning of the compaction requirement. We disagree with Dale's that prejudgment interest is proper merely when damages are "ascertainable by some standard." In *Cloud v. Riddell,* 54 Or App 917, 923, 636 P2d 996 (1981), *rev den* 292 Or 581 (1982), we stated:

> "[G]iven the conflicting claims of the parties and lack of agreement upon the amount in dispute, it can hardly be said that the exact pecuniary amount owed by defendant was ascertainable."

Except for prejudgment interest from November 1, 1977, on $1,983.60, which was a liquidated sum owed for delivered rock, the award of pre-judgment interest was erroneous and is reversed.

■ Dale's cross-appeal claims two errors: the standard the trial court used for calculation of the reasonable value of the compacting work and the finding that Dale's learned of the compaction requirement when its fill work was only 50 percent completed. Dale's points to nothing in the record showing that these errors were brought to the attention of the trial court. After the trial court had issued its letter opinion, Westwood entered its objections to the findings in the letter opinion, and a hearing was held. Dale's thus had an opportunity to make its objections known so that the trial court could rule on them and correct any errors. Following the rule in *Falk v. Amsberry,* 290 Or 839, 626 P2d 362 (1981), we decline to consider these issues for the first time on appeal.

The award of prejudgment interest on the principal sum of $25,464 to plaintiff is reversed; otherwise, the judgment of the trial court is affirmed and remanded for entry of a new judgment not inconsistent with this opinion.