Argued and submitted December 20, 2001, affirmed on appeal and cross-appeal
January 30, 2002

David STRADER
and Kathy Strader,
*Appellants - Cross-Respondents,*

*v.*

GRANGE MUTUAL INSURANCE COMPANY,
an Oregon Mutual Insurance Company,
*Respondent - Cross-Appellant.*

9711-09410; A110669

39 P3d 903

Linda K. Williams argued the cause and filed the opening brief for appellants - cross-respondents. With her on the reply and cross-answering brief was Mark McDougal.

R. Daniel Lindahl argued the cause for respondent - cross-appellant. With him on the brief were John A. Bennett and Bullivant Houser Bailey, P.C.

Before Landau, Presiding Judge, and Brewer and Schuman, Judges.

SCHUMAN, J.

**SCHUMAN, J.**

Plaintiffs brought this action against their insurer, Grange Mutual Insurance Company (defendant), for breach of contract and for personal injury. The trial court granted defendant's motion for partial summary judgment on the personal injury claim. The breach of contract claim went to trial, where plaintiffs prevailed and were awarded damages plus prejudgment interest but not attorney fees. Plaintiffs appeal the adverse rulings on their personal injury claim and their claim for attorney fees. Defendant cross-appeals the award of prejudgment interest. The three issues are whether plaintiffs could base a personal injury claim on conduct that was a breach of contract; whether defendant is immune from liability for attorney fees because it is a "patrons of husbandry" organization; and whether plaintiffs' damages were readily ascertainable at an identifiable time and could therefore support an award of prejudgment interest. Reviewing for errors of law, we affirm on the appeal and cross-appeal.

Defendant, recognizing that, on appeal from a grant of summary judgment, we view the record in the light most favorable to the nonmoving party, *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997); ORCP 47 C, accepts the following facts derived from plaintiffs' account of events.

Plaintiffs bought a home in Milwaukie in September 1995 and insured it under a homeowners' policy issued by defendant. Three months later, a windstorm stripped shingles off the roof, causing extensive water damage to the house and its contents. Defendant arranged for temporary repairs, which did not succeed in preventing further water damage or in allowing the existing moisture to evaporate. Permanent repairs to the roof were finished a year after the storm, in December 1996, but defendant and plaintiffs could not agree on the amount due under the policy.

During the winter after the roof was sealed, plaintiff Kathy Strader began having health problems. Her physician told her that the cause was asthma aggravated by an allergy to mold spores and advised her to reduce exposure to her home. Plaintiffs informed defendant of this diagnosis and

showed one of defendant's executives the still-moist areas of the house where mold flourished. Defendant continued its refusal to pay plaintiffs the amount requested to rectify the water damage, including the mold. This litigation ensued.

In their complaint, plaintiffs alleged breach of the insurance contract, maintaining that defendant had not met its obligation under the policy to pay compensation sufficient to cover repair of the roof and water damage. As a separate claim, they alleged that defendant's "unreasonable delays in repairing the roof and its failure to correct the moisture problem and provide funds to adequately remove the mold or replace items contaminated with mold" foreseeably caused Kathy Strader's personal injury. The trial court granted summary judgment to defendant on the personal injury claim. The case went to trial on the breach of contract claim, and the jury awarded plaintiffs $195,500 in damages. After verdict, the parties disputed whether plaintiffs were entitled to prejudgment interest and attorney fees. Defendant maintained that it could not be taxed for attorney fees because, as a "patrons of husbandry association," it was exempt under ORS 731.032(4), and that prejudgment interest was inappropriate because the exact amount of damages was not easily ascertainable. *Tifft v. Stevens*, 162 Or App 62, 82, 987 P2d 1 (1999), *rev den* 330 Or 331 (2000). The trial court awarded plaintiffs $43,672.50 in prejudgment interest but disallowed attorney fees.

## I. THE PERSONAL INJURY CLAIM

Plaintiffs argue that, by delaying repair of the roof and refusing to pay for mold abatement, defendant breached two duties: first, an actor's duty to exercise reasonable care to prevent further harm to a person whom the actor has already harmed and rendered helpless and, second, an actor's duty, once the actor has undertaken efforts to aid a person, to exercise reasonable care in completing the rescue effort.

The allegedly tortious conduct that plaintiffs identify as the cause of the personal injury—underpayment and non-payment—are precisely the same conduct that they identify as the breach of contract.[1] Whether plaintiffs can bring a tort

---

[1] In their reply brief, plaintiffs attempt to avoid that conclusion by asserting that "the negligent conduct at issue here is the failure to timely assist

claim here is therefore governed by *Georgetown Realty v. The Home Ins. Co.*, 313 Or 97, 831 P2d 7 (1992), and its progeny. In *Georgetown Realty,* the plaintiff sued its liability insurer for negligent performance of its duty to defend the plaintiff in another tort claim. In allowing the action to go forward, the court held:

> "When the relationship involved is between contracting parties, and the gravamen of the complaint is that one party caused damage to the other by negligently performing its obligations under the contract, then, and even though the relationship between the parties arises out of the contract, the injured party may bring a claim for negligence if the other party is subject to a standard of care independent of the terms of the contract." *Id.* at 106.

The court explained that "the standard of care independent of the terms of the contract" would derive from the dynamics of the relationship between the contracting parties:

> "When a liability insurer undertakes to 'defend,' it agrees to provide legal representation and to stand in the shoes of the party that has been sued. The insured relinquishes control over the defense of the claim asserted. Its potential monetary liability is in the hands of the insurer. That kind of relationship carries with it a standard of care that exists independent of the contract and without reference to the specific terms of the contract." *Id.* at 110-11 (footnote omitted).

Thus, to bring a tort claim based on conduct that is also breach of a contract, a plaintiff must allege, first, that the defendant's conduct violated some standard of care that is not part of the defendant's explicit or implied contractual obligations; and, second, that the independent standard of care stems from a particular special relationship between the parties. *Id.*

Subsequent cases have elaborated on the kinds of relationships between contracting parties that can create a standard of care beyond anything in the contract itself. The

---

Mrs. Strader," not the failure timely to repair the roof and provide for mold abatement. However, plaintiffs' complaint identifies the alleged cause of injuries only as "defendant's unreasonable delays in repairing the roof and its failure to correct the moisture problem and provide funds to adequately remove the mold or replace items contaminated with mold." No other "failure to timely assist" is alleged.

classic description is from *Conway v. Pacific University*, 324 Or 231, 240-41, 924 P2d 818 (1996):

> "This special responsibility exists * * * in the type of situation described in *Georgetown Realty*, in which one party has relinquished control over the subject matter of the relationship to the other party and has placed its potential monetary liability in the other's hands. In all those relationships, one party has authorized the other to exercise independent judgment in his or her behalf and, consequently, the party who owes the duty has a special responsibility to administer, oversee, or otherwise take care of certain affairs belonging to the other party."

*Accord Bennett v. Farmers Ins. Co.*, 332 Or 138, 161-62, 26 P3d 785 (2001) (key factor is "whether the *nature of the parties' relationship itself* allowed one party to exercise control in the first party's best interests * * * [and] to exercise judgment on the other party's behalf") (emphasis in original).

■   Further, the cases establish a functional as opposed to a formal analysis in determining whether the special relationship exists; in other words, the crucial aspect of the relationship is not its name, but the roles that the parties assume in the particular interaction where the alleged tort and breach of contract occur. Thus, for example, a relationship between a manufacturer and a dealer may give rise to the former's special responsibility to the latter, or it may not, depending on the nature of the parties' dealings. *See Hampton Tree Farms, Inc. v. Jewett*, 320 Or 599, 617, 892 P2d 683 (1995) (parties to a contract may or may not have special relationship depending on circumstances). More to the point, the relationship between an insurer and its insured is special with respect to the insurer's performance of its duty to defend, so that negligent performance of that duty gives rise to a tort claim, but the same relationship is not special with respect to the insurer's refusal to settle within policy limits, which sounds only in contract; in the former context, the insurer is in something resembling a fiduciary role, whereas in the latter it and the insured are adversaries. *Warren v. Farmers Ins. Co. of Oregon*, 115 Or App 319, 838 P2d 620 (1992), *rev den* 316 Or 529 (1993).

■    Applying these precepts to this case, we readily conclude that the trial court correctly rejected plaintiffs' personal injury claim. As we have noted, plaintiffs alleged that defendant's delayed payment and nonpayment were breaches of the insurance contract and also violations of independent standards of care, thus squarely putting this claim within the ambit of *Georgetown Realty* and subsequent cases. And although it is true that plaintiffs and defendant were in a relationship bearing the label "insured and insurer," and that in some cases, including *Georgetown Realty* itself, we have found that a relationship with this name can create a special fiduciary-like relationship, this is not such a case. Plaintiffs did not delegate to defendant the full authority to determine, on plaintiffs' behalf, how much money plaintiffs would receive as compensation for storm damage. In calculating that amount, defendant was not, by virtue of its status or role, dedicated to furthering plaintiffs' interests. *Bennett,* 332 Or at 162. Defendant had no mandate to exercise independent judgment for the sole benefit of plaintiffs. *Conway,* 324 Or at 241. To the contrary, the situation more closely resembles those in which an insurer refuses to settle within policy limits or refuses to undertake a defense, that is, situations in which "the interests of the insurer come into conflict with the interests of the insured." *Farris v. U.S. Fid. and Guar. Co.,* 284 Or 453, 587 P2d 1015 (1978); *Warren,* 115 Or App at 325. Defendant and plaintiffs, therefore, were not in the kind of relationship that gives rise to a standard of care independent of the contract terms. We therefore affirm the trial court's grant of partial summary judgment in favor of defendant.[2]

## II.   ATTORNEY FEES

■    Plaintiffs moved for attorney fees under ORS 742.061(1), which provides, in part:

> "[I]f settlement is not made within six months from the date proof of loss is filed with an insurer and an action is brought

---

[2] We do not decide whether, if plaintiffs had established a special relationship, their claim that defendant breached a duty to rescue or to mitigate harm would have been cognizable under Oregon tort law, or, if so, whether those duties would be implicated under the facts of this case.

> in any court of this state upon any policy of insurance of any kind or nature, and the plaintiff's recovery exceeds the amount of any tender made by the defendant in such action, a reasonable amount to be fixed by the court as attorney fees shall be taxed as part of the costs of the action and any appeal thereon."

The trial court denied the motion, concluding that ORS 742.061(1) does not apply to defendant. The court reasoned that defendant has been certified by the Director of the Department of Consumer and Business Services (Director) to conduct business in Oregon as a patrons of husbandry association, ORS 731.042, and is therefore exempt from the Insurance Code, including the fee-shifting statute, by virtue of ORS 731.032(4), which specifies that the Insurance Code does not apply to a certified "patrons of husbandry association." On appeal, plaintiffs argue that defendant is *not* a legitimate patrons of husbandry association and that, even if it is, under generally accepted precepts of statutory construction as set forth in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611-12, 859 P2d 1143 (1993), the general fee-shifting statute supersedes the particular exemption. We reject both of those arguments.

As plaintiffs acknowledge, the Director has issued defendant a "Certificate of Exemption" stating that defendant is "an exempt insurer" for purposes of ORS 731.032. That certificate demonstrates that defendant has satisfied the Director that it qualifies for the exemption from the Insurance Code. ORS 731.042(3). Plaintiffs' argument, then, can succeed only by successfully challenging the Director's determination. Even if they could make that collateral challenge at this time and in this forum, which we expressly do not decide, they do not make it; instead, they insist that, although the Oregon Grange is a patrons of husbandry association, defendant, the Grange Mutual Insurance Company, is not. That bare assertion does not take them where they need to go. The decision whether an organization qualifies for a statutory exemption from the insurance code is delegated by statute to the Director, and plaintiffs simply do not attempt to demonstrate why or how the Director has erred, for example by exempting an organization that does not meet specified criteria or by violating some procedural rule. Nor do

they explain how the Oregon Supreme Court erred when it declared defendant's predecessor organization a patrons of husbandry association in *Geddes v. Or. Grange Fire Relief Ass'n.*, 147 Or 275, 281, 32 P2d 774 (1934), nor how the Attorney General erred in twice reaching the same conclusion, most recently in 1987. 45 Op Atty Gen 196 (1987); 26 Op Atty Gen 36, 37 (1952). Defendant has a duly issued certificate of exemption and therefore falls within the ambit of ORS 731.032(4).

Plaintiffs also contend that, even if defendant qualifies for the statutory exemption, we must nonetheless apply the general statute that provides for attorney fee recovery in "any court of this state upon any policy of insurance of any kind or nature," ORS 742.061, because it is unambiguous. To the extent the certified exemptions in ORS 731.032 and ORS 731.042 create an ambiguity by conflicting with the blanket rule in ORS 742.061, plaintiffs argue that we must resolve that ambiguity by applying what they call a *PGE* "first level rule of construction that bear[s] directly upon the interpretation of the statutory provision," namely the rule "that a fee-shifting statute is remedial in nature and liberally construed." We disagree.

ORS 731.032(4) and ORS 731.042 establish that the Insurance Code does not apply to Director-certified patrons of husbandry associations. The Insurance Code includes ORS 742.061, the attorney fee statute. ORS 731.004. Plainly, then, the attorney fee statute does not apply to Director-approved patrons of husbandry associations. Plaintiffs' argument that we must ignore the statutory exclusions and give effect only to the blanket rule fails to recognize that the exemptions are obviously related to the rule and therefore part of its context. *PGE,* 317 Or at 611. Plaintiffs also mischaracterize the "rule" regarding liberal construction as a "first level" rule under the so-called "template" established by *PGE.* In fact, the rule regarding liberal interpretation of remedial statutes is a policy-based rule, as opposed to a syntax-based rule, and therefore operates at the "third level" under *PGE*—a level we do not reach when, as here, the text and context of a provision are clear. The relevant "first level" rule in this case is the one declaring that, "[w]hen a general and particular provision are inconsistent, the latter is paramount to the former so that a

particular intent controls a general intent that is inconsistent with the particular intent." ORS 174.020(2); *PGE,* 317 at 611. A corollary rule establishes that, in such circumstances, the specific statute is considered an exception to the general one. *Smith v. Multnomah County Board of Commissioners,* 318 Or 302, 309, 865 P2d 356 (1994). The trial court did not err in denying plaintiffs' motion for attorney fees.

## III.   PREJUDGMENT INTEREST

■       Over defendant's opposition, the trial court awarded plaintiffs $43,672.50 in prejudgment interest. The parties agree that a trial court may award prejudgment interest on damages only when the exact amount is ascertained or easily ascertainable by simple computation or by reference to generally recognized standards such as market price and where the time from which interest should run is also easily ascertainable. *Public Market Co. v. Portland,* 171 Or 522, 625, 130 P2d 624, 138 P2d 916 (1943); *Smith v. Williams,* 98 Or App 258, 263, 779 P2d 1057 (1989). Defendant does not argue that the trial court chose the wrong date or that the date is not ascertainable. Nor does it argue that plaintiffs' breach of contract claim is an action at law and therefore prejudgment interest may not be awarded because neither a statute nor a contract provision requires it. *See Newell v. Weston,* 150 Or App 562, 584, 946 P2d 691 (1997), *rev den* 327 Or 317 (1998) (so holding). Nor does it argue that the damages awarded are of an inherently speculative type that can never be readily and precisely ascertained. Defendant's sole argument on appeal is that the amount owed was neither ascertained nor easily ascertainable because, first, plaintiffs submitted different amounts at different times before and during trial and, second, the amount plaintiffs ultimately pleaded differed from the amount defendant offered and both these amounts differed from the jury's determination. Defendant, in other words, bases its argument entirely on the proposition that, unless the parties agree as to the amount of damages or the amount derives from the automatic application of an agreed-upon formula, prejudgment interest is improper.

■       Defendant relies on *Arden-Mayfair v. Patterson,* 46 Or App 849, 857-58, 613 P2d 1062, *rev den* 290 Or 149 (1980),

where this court held that prejudgment interest was not proper because,

> "[g]iven the conflicting claims of the parties, it can hardly be said that the exact pecuniary amount owed by plaintiff was easily ascertained, or ascertainable, by simple computation. A review of the evidence clearly shows that the parties did not agree upon the amount in dispute."

Defendant might also have cited *Dale's Sand & Gravel v. Westwood Construction*, 62 Or App 570, 661 P2d 1378, *rev den* 295 Or 259 (1983), or *Cloud v. Riddell*, 54 Or App 917, 636 P2d 996 (1981), *rev den* 292 Or 581 (1982). However, this court effectively abandoned that line of cases, by name, in *Banister Continental Corp. v. NW Pipeline Corp.*, 76 Or App 282, 293, 709 P2d 1103 (1985), *vacated on other grounds* 301 Or 763, 724 P2d 822 (1986), and adopted instead a conflicting line of cases holding unequivocally that "[t]he facts that defendant disputed any liability and that the jury did not award plaintiff all the damages that it sought are insufficient grounds to deny prejudgment interest." *Id.*

■■    Since *Banister*, we have repeatedly reaffirmed its holding, despite the fact that the Supreme Court vacated our opinion on unrelated grounds. *See, e.g., Guinasso v. Pacific First Federal,* 89 Or App 270, 749 P2d 577, *rev den* 305 Or 672 (1988). By now, it is well settled that, "even though damages are not ascertainable until issues of fact have been decided [by the jury], prejudgment interest is proper." *Goodyear Tire & Rubber Co. v. Tualatin Tire & Auto,* 129 Or App 206, 218, 879 P2d 193 (1994), *aff'd in part, rev'd in part* 325 Or 46, 932 P2d 1141 (1997). Put another way, "[a]lthough there are questions of fact about the amounts owed, that does not mean that defendant did not owe sums certain at dates certain." *Hazelwood Water Dist. v. First Union Management,* 78 Or App 226, 231, 715 P2d 498 (1986).

In the present case, the jury heard conflicting testimony about the amount of damages based on evidence of actual expenses and prevailing market rates. It resolved that disputed fact issue, finding that defendant's breach of contract damaged plaintiffs in the amount of $195,500. On appeal, defendant does not dispute this amount, the date the

trial court decided that it was due, or whether it constituted the type of damages appropriate for prejudgment interest. The court did not err in awarding prejudgment interest.

Affirmed on appeal and cross-appeal.