Argued and submitted May 16 at Pendleton, Oregon, affirmed in part, reversed in part
September 18, 1985

**BOURRIE,**
*Appellant,*

*v.*

**UNITED STATES FIDELITY AND
GUARANTY INSURANCE COMPANY,**
*Respondent.*

**(83-8-1032; CA A33321)**

707 P2d 60

Leeroy O. Ehlers, Pendleton, argued the cause and filed the briefs for appellant.

Jas. Jeffrey Adams, Portland, argued the cause for respondent. With him on the brief was Mitchell, Lang & Smith, Portland.

Before Richardson, Presiding Judge, and Warren and Young, Judges.

WARREN, J.

**WARREN, J.**

Plaintiff's home was destroyed by fire on August 25, 1982. Defendant had issued a policy insuring plaintiff's home and its contents against risk of loss by fire, and the policy was in effect at the time of the loss. It provided limited compensation for additional living expenses incurred if a covered loss made the residence uninhabitable, for the actual cash value of the loss of the building and its contents and, under specific circumstances, for the replacement cost of the building and its contents. Plaintiff completed a sworn proof of loss on October 7, 1982, as requested by defendant, and shortly thereafter received a payment of $33,929.50 as compensation for the actual cash value of the loss of the building and its contents. He also completed a statement of the full cost of replacement of the insured property on the same date.

Plaintiff undertook to replace the building at an adjacent site. He thought the insurance contract required him to complete replacement within 180 days of the loss, because that is what the insurance adjuster told him. He obtained two six-week extensions of the period but failed to complete the building within the extended time. Defendant denied compensation for the replacement cost because of plaintiff's failure to comply with the alleged condition. Defendant offered to settle plaintiff's claim for additional living expenses, but plaintiff rejected the offer. He then commenced this action, seeking additional living expenses and a declaration whether, under the policy, he was required to complete the replacement of the building and its contents within the 180-day period, plus any extensions granted.

At the end of plaintiff's case, defendant moved for a directed verdict on both claims. As to the first, the court found that plaintiff had not complied with a policy provision requiring him to submit receipts for additional living expenses within 60 days of defendant's request for the proof of loss and granted the motion on that basis. As to the declaratory judgment, the court held that the policy required plaintiff to complete the replacement within the 180-day period.[1] Plain-

---

[1] That is clearly a legal conclusion, reviewable by this court. The court went on to find that plaintiff did not complete the replacement within the 180-day period plus the two extensions and held, as a "conclusion of law," that plaintiff is therefore not entitled to recover the replacement cost. The court directed a verdict for defendant. We shall limit ourselves to plaintiff's requested relief and declare the rights of the parties under our construction of the insurance policy.

tiff appeals from those rulings and assigns as additional errors several evidentiary rulings.

As to plaintiff's first claim, it is undisputed that the policy requires a claimant to submit receipts for additional living expenses within 60 days of the insurer's request for a sworn proof of loss. ORS 743.660 provides that no action may be maintained on a fire insurance policy unless all policy conditions are complied with. Plaintiff claims that, had Exhibit 11 and questions relating thereto been admitted, sufficient evidence of additional living expenses would have been before the court. The exhibit was labeled "statement of loss" and was claimed to be an agreement between plaintiff and defendant's adjuster evaluating plaintiff's additional living expenses. Defendant objected to the exhibit on the ground that it was a statement made during negotiations to compromise a disputed claim and was not admissible to prove the amount of the claim. OEC 408(1). Exhibit 11 clearly was not a receipt required by the policy. Whether the statement was made during negotiation of a disputed claim was a question of fact for the trial court, sitting without a jury, and the court's finding that the statement was made in that circumstance is supported by the evidence. The trial court did not err in denying admission of Exhibit 11 and questions relating thereto.

Plaintiff also argued in the trial court, in opposition to defendant's motion, that defendant had waived this policy condition; he renews that argument here. The trial court properly did not consider the waiver issue, because it was not raised in the pleadings. In his amended complaint, plaintiff alleged that he had fully performed all the conditions of the policy. In its answer, defendant specifically alleged that plaintiff had failed to comply with the policy condition in issue.

ORCP 13B provides, in pertinent part:

"* * * There shall be a reply to a counterclaim denominated as such and a reply to assert any affirmative allegations in avoidance of any defenses asserted in an answer. * * *"

A claim of waiver is one in avoidance of a defense of non-compliance with a policy condition and must be pleaded in a reply. Because plaintiff failed to plead waiver in the reply, that issue was not framed by the pleadings and the trial court

properly did not consider it. *Lang v. Oregon Nurses Assn.,* 53 Or App 422, 427, 632 P2d 472, *rev den* 291 Or 771 (1981). The trial court did not err in directing a verdict for defendant on plaintiff's claim for additional living expense.

Plaintiff's next assignment contends that the court erred in declaring the parties' rights in accordance with defendant's interpretation of the contract. (*See* n 1, *supra.*) The court declared that the policy required plaintiff to complete reconstruction and replacement of the house and its contents within 180 days of loss. We do not agree with the trial court's construction of the policy.

The following policy provisions are relevant to an interpretation of this aspect of the replacement value coverage for the building:

> "[3.c.](4) When the cost to repair or replace the damage is more than $1000 or more than 5% of the amount of insurance in this policy on the building, whichever is less, we will pay no more than the actual cash value of the damage until actual repair or replacement is completed.

> "(5)    You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage to buildings on an actual cash value basis and then make claim within 180 days after loss for any additional liability on a replacement cost basis."

Similar requirements apply to the replacement value coverage for personal property:

> "When the replacement cost for the entire loss under this endorsement exceeds $500, we will pay no more than the actual cash value for the loss or damage until the actual repair or replacement is completed.

> "You may make a claim for loss on an actual cash value basis and then make claim within 180 days after the loss for any additional liability in accordance with this endorsement."

The first section of each of the above-cited sets of provisions provide that the insurer will not pay for repair or replacement costs incurred, in excess of the actual cash value of the loss, until the actual repair or replacement is completed. The second section requires the insured to "make claim" for additional liability for replacement cost within 180 days of the loss. The issue is what is meant by "make claim."

■ ■  The trial court agreed with defendant's argument that the insured could not "make claim" for the additional liability until the replacement had been completed and the ultimate costs liquidated and interpreted the two sections to require plaintiff both to complete the replacement and to "make claim" within 180 days. Plaintiff argued that he was required only to notify defendant within 180 days of his intention to replace the building and its contents and then to complete the replacement within a reasonable time. We agree. When a contract is silent as to the time within which replacement must be completed, the law will imply a requirement that it be done within a reasonable time. *Taylor et ux. v. Wells et ux.,* 188 Or 648, 655, 217 P2d 236 (1950).[2] Whether that has been done is an issue still unresolved.

In *Higgins v. Insurance Co. of N. America,* 256 Or 151, 469 P2d 766 (1970), the court held that fire policy provisions precluding recovery of replacement cost until replacement is completed are reasonable, as protection against "the moral hazard," and enforceable. In discussing general aspects of replacement cost insurance, the court cited authorities stating that fire policies generally provide that replacement cost is not recoverable until actual replacement is completed. The court also cited an authority, which stated:

> " "* * * In the usual course, liability under the policy accrues on an actual cash value basis until repair or replacement has actually been effected. This means that if the property is not repaired or replaced, the only liability of the company will be on an actual cash value basis. *Some companies specify a time limit within which repair or replacement must be completed. It is usual to provide that repairs or replacements shall be completed with due diligence and dispatch, ordinarily within 12 months.'* Magee and Bickelhaupt, op. cit. supra at 310." 256 Or at 164. (Emphasis supplied.)

If defendant had intended to require repair or replacement

---

[2] Defendant argues that plaintiff took more than a reasonable time to complete the replacement. We express no opinion on this issue, because it is beyond the scope of the issues framed by the pleadings.

Plaintiff assigns error to the trial court's sustaining defendant's objection to questions asking plaintiff to estimate how long it would take to complete the house. The evidence offered was not relevant to any issue in the case, and the trial court did not err.

within a specific period of time, it would have been a simple matter to so require in clear language. Defendant did not do so, and we construe the ambiguity in the policy against the drafter.[3]

Defendant cites *Bourazak v. North River Insurance Company,* 379 F2d 530 (7th Cir 1967), in support of its interpretation of the policy. The fire policy in that case provided that the insurer would not be liable for replacement cost until actual replacement was completed and that claims for replacement cost must be made within 120 days after loss. The plaintiff did not mention the 120-day period in the complaint, but relied instead on a representation by the insurer's agent that replacement cost would be paid "upon rebuilding of structure if rebuilding was commenced within 180 days" of the payment for actual loss. 379 F2d at 531. The court held that the plaintiff had failed to satisfy the alleged condition to commence rebuilding within 180 days.

> "* * * Certainly the insured's expressed intention to rebuild and the removing of debris or doing excavation work 'preparatory to rebuilding' cannot be held to be in compliance with the alleged condition. * * *" 379 F2d at 532.

That case did not construe the policy language requiring a claim to be made within 120 days of the loss and does not stand for the proposition that an insured cannot "make claim" simply by expressing to the insurer his intention to

---

[3] The Supreme Court of Maine recently construed an identical provision to 3.c.(5), cited above, as imposing *no* requirement on the insured to "substantially complete" replacement within 180 days of the loss. The court stated:

> "Similarly, there is no merit in defendant's claim that eligibility for replacement cost reimbursement is contingent upon the replacement structure being 'substantially complete' within 180 days of the loss. Section 3(c)(5) of the contract provides that to qualify for reimbursement for replacement cost, the insured must 'make claim within 180 days after loss.' There is simply no support for the company's argument that the obligation to make a claim imposes the requirement that the replacement building must be 'substantially complete' at the time the claim is made. The language of the contract is clear and unambiguous and it supports the judgment rendered in this case." *Blanchette v. York Mut. Ins. Co.,* 455 A2d 426, 428 (Me 1983).

We agree completely with that reasoning but do not find the contract to be quite so clear.

rebuild. The trial court erred in its declaration of the parties' rights.[4]

■    Plaintiff assigns error to the court's admitting Exhibit 12 and questions relating thereto. The exhibit was a statement of labor charges from the contractor replacing plaintiff's home. Two of the charges were for excavation and construction of the foundation for the new building and for the construction of a new tool shed. Defendant offered the exhibit and testimony to show that it was not liable for these expenses under its policy, and plaintiff objected that the evidence was irrelevant to the issue of whether the replacement cost is recoverable. We agree that the evidence was not relevant to the issue before the court and that the trial court erred in admitting it.

Affirmed as to the claim for additional living expense; reversed as to the declaration of plaintiff's rights.

---

[4] As stated in n 1, *supra*, the trial court did not simply declare the rights of the parties, which was the only relief plaintiff requested in his second cause of action, but treated the complaint as seeking a determination of defendant's liability for replacement cost and purported to direct a verdict for defendant dismissing plaintiff's claim with prejudice.