Argued and submitted September 13, 2013, reversed and remanded
October 8, 2014

Lowell E. PATTON,
*Plaintiff-Appellant,*

*v.*

MUTUAL OF ENUMCLAW INSURANCE COMPANY,
a Washington corporation,
*Defendant-Respondent,*

*and*

HOPP INSURANCE AGENCY, INC.,
an Oregon corporation;
and Randy W. Hopp,
*Defendants.*

Multnomah County Circuit Court
031112054; A150143

337 P3d 874

Helen C. Tompkins argued the cause for appellant. On
the briefs was Robert K. Udziela.

Thomas M. Christ argued the cause for respondent. With
him on the brief was Cosgrave Vergeer Kester LLP.

Before Armstrong, Presiding Judge, and Nakamoto,
Judge, and Egan, Judge.

NAKAMOTO, J.

## NAKAMOTO, J.

This insurance coverage case comes before us a second time. In the first appeal, *Patton v. Mutual of Enumclaw Ins. Co.*, 238 Or App 101, 242 P3d 624 (2010), *rev den*, 349 Or 654 (2011) (*Patton I*), this court reversed a judgment for plaintiff on his breach of contract claim on a homeowners' insurance policy and remanded for a new trial. On remand, the trial court granted the motion for summary judgment filed by defendant Mutual of Enumclaw Insurance Company (defendant or MOE), ruling that, under the terms of the policy as written, and as interpreted by this court in *Patton I*, plaintiff's claim was untimely. The trial court then entered a general judgment in defendant's favor. Plaintiff appeals. We review for errors of law and, for the reasons set forth below, reverse and remand.[1]

In addition to basic coverage, and coverage for loss of use and damage to personal property, plaintiff's policy included an endorsement for "guaranteed replacement cost" of the house. *Patton I*, 238 Or App at 103-04. Pursuant to that endorsement, in the event of loss, as an alternative to payment of the basic coverage liability limit, MOE agreed to pay:

"not more than the lesser of:

"1.   The replacement cost of that part of the building damaged for like construction and use on the same premises; or

"2.   The necessary amount required to repair or replace the damaged building."

As relevant to this appeal, the policy contains the following additional terms explaining that covered losses were to be settled as follows:

"(4)   We will pay no more than the actual cash value of the damage unless:

---

[1] Because we reverse the trial court's grant of defendant's motion for summary judgment, we do not reach plaintiff's other assignment of error, in which plaintiff argues that summary judgment for defendant on the breach of contract claim should not have applied to foreclose plaintiff's purported additional claim for actual cash value, a claim that the trial court ruled was not contained in the complaint operative at the time the summary judgment motion was filed and litigated.

"(a)   actual repair or replacement is complete; or

"(b)   the cost to repair or replace the damage is both:

"(i)   less than 5% of the amount of insurance in this policy on the building; and

"(ii)   less than $2,500.

"(5)   You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage to buildings on an actual cash value basis. You may then make claim within 180 days after loss for additional liability on a replacement cost basis."

An additional endorsement, which we refer to as the "no-action" clause, provides that "[n]o action can be brought unless the policy provisions have been complied with and the action is started within two years after the date of loss."

Plaintiff's house burned down on November 8, 2001 (thus giving plaintiff, under the terms of the policy, until November 8, 2003, to bring suit against MOE). *Patton I*, 238 Or App at 105. Plaintiff made a claim under the policy and notified MOE of his intent to invoke the policy's replacement-cost endorsement. *Id.* In the ensuing months, plaintiff received several estimates for the cost of replacing his home: one for between $3.6 and $4 million, a second for $3.858 million, and a third—obtained by MOE's adjuster from Oregon Home Improvement Company (OHI)—for $1.544 million. *Id.*

Plaintiff did not begin reconstruction at that time because he was initially unable to obtain the required building permit. *Id.* After plaintiff notified MOE of the problem, plaintiff received several letters from MOE's attorney, Smith, reminding plaintiff that he could not recover replacement costs until reconstruction was complete and that he only had two years from the date of the fire to bring any action against MOE. *Id.* at 106-09. Approximately two months before the second anniversary of the fire, plaintiff entered into a construction contract to rebuild the home at a cost over twice the estimate that MOE had obtained from OHI. *Id.* at 110.

Shortly before the second anniversary of the fire, plaintiff filed a complaint against MOE. Due to continuing

delays in the permitting process, plaintiff had not yet begun reconstruction. Plaintiff sought a declaration that, under the policy, MOE was obligated to compensate plaintiff for replacement costs incurred more than two years from the date of loss. Plaintiff further alleged that MOE had breached the policy by refusing to pay replacement costs in excess of the amount of OHI's bid. *Id.* at 110.

In *Patton I*, MOE moved for summary judgment on both the breach of contract and declaratory judgment claims. *Id.* at 117 n 6. With regard to plaintiff's claim for declaratory relief, defendant argued that the policy required completion of construction as a condition for payment of replacement cost benefits and that plaintiff had not yet replaced the home. *Id.* at 110. Specifically, MOE argued that,

> "as a matter of law, the unambiguous terms of the policy did not allow for recovery of replacement costs for work completed more than two years from the date of loss. MOE pointed out that the 'settlement of loss' section of the policy requires that, in order to recover damages in excess of 'actual cash value of the damage,' the actual repair or replacement must be complete. In MOE's view, that requirement is a 'policy provision' that must be complied with in order to recover replacement costs. MOE asserted that, in light of the two-year limitation on filing suit, and in view of the further requirement that '[n]o action can be brought unless the policy provisions have been complied with,' necessarily, the replacement of a residence must be actually completed within two years of the loss in order to recover replacement costs, and no replacement costs incurred after the two-year limitation may be recovered."

*Id.* at 110-11 (footnote omitted). With regard to the breach of contract claim,

> "MOE asserted that, in order to have recovered replacement cost benefits over and above those that MOE had previously advanced, plaintiff had only been required to submit sufficient documentation to show that additional costs were necessary and actually spent on reconstruction. Further, MOE contended, although it had advanced plaintiff funds in excess of the actual cash value of the home, *i.e.*, the policy limits for the dwelling, MOE did not have an obligation to do so under the policy and had no obligation to pay further benefits."

*Id.* at 110. Thus, defendant argued in its first summary judgment motion that plaintiff could not recover any replacement costs for the reconstruction of his home because he had not even begun to construct the new house at the time he commenced the action.

The trial court denied MOE's summary judgment motion in *Patton I*, rejecting MOE's interpretation of the policy and its contention that the only repairs and replacements compensable were those completed within two years of loss:

> "The court noted the policy's requirement that suit could not be brought until 'the policy provisions have been complied with,' and agreed that completion of construction was a condition for recovery of replacement costs, but disagreed with MOE's view that the policy required *completion of construction within two years of the loss.* In the court's view, the replacement cost provision 'only addresses the **measure** of compensation to which an insured is entitled, not whether an insured is entitled to any compensation at all.' (Emphasis trial court's.) The court noted that the policy does not state an explicit time limitation on repairs or replacement. Citing *Bourrie v. U.S. Fidelity and Guaranty Ins. Co.*, 75 Or App 241, 707 P2d 60 (1985), the court concluded that, in the absence of a time limit stated in the policy, the law implies a reasonable time limit within which replacement must be completed. Thus, the court held, the two-year limitation provision of the policy does not limit plaintiff to compensation for replacement costs incurred within two years from the time of loss[.]"

*Patton I*, 238 Or App at 111-12. The court subsequently ordered that the case be placed in abatement so that plaintiff could complete construction. *Id.* at 112.

The case was removed from abatement and came to trial two weeks before the completion of construction. At the outset of trial, plaintiff successfully contended that the policy had been changed by MOE's agent and that the scope of the trial should be limited to whether MOE was obligated to pay replacement costs because his new house was of "like construction and use":

> "[P]laintiff sought a ruling from the trial court that Smith's letters had provided an interpretation of the policy that

was binding on MOE and that required MOE to pay all replacement costs, as long as the replacement was of 'like construction and use.' The trial court agreed with plaintiff that Smith's letters provided an interpretation of the policy to which MOE was bound and, further, that the letters promised that MOE would pay for new construction as long as the new house was of 'like construction and use.' The trial court also granted plaintiff's motion *in limine* to limit trial to the question of whether the new house was of like construction and use, to exclude evidence of the amount that plaintiff had paid for the house that burned, and to exclude any evidence of plaintiff's failure to comply with conditions of the policy.

"The trial court then allowed plaintiff to file an amended complaint, which alleged a new breach of contract claim against MOE, based on MOE's alleged refusal to pay plaintiff the actual cost of replacing the destroyed home with a home of like construction and use. * * *

"* * * * *

"MOE's answer asserted several affirmative defenses, among them failure to state a claim and failure to meet the policy's conditions of coverage. The trial court struck MOE's affirmative defenses as contrary to the promises expressed in Smith's letters. The trial court also denied MOE's request to exclude Smith's letters as irrelevant and to construe the policy as written rather than as interpreted in the letters. MOE continued during trial to assert the terms of the policy, but the trial court repeatedly ruled that the letters controlled the interpretation of the policy."

*Id.* at 112-13.

Each of the parties later sought a directed verdict on the breach of contract claim. The trial court denied MOE's motion, which was premised on the contention that it had not breached the contract at the time the action was filed. *Id.* at 116. The trial court granted plaintiff's motion:

"Plaintiff then sought a directed verdict on the breach of contract claim, contending that '[t]here is no evidence in the record that this house is not like construction and use[.]' The trial court allowed the motion and entered judgment for plaintiff for damages based on the full amount

spent to rebuild the house, $3.23 million, less the $1.7 million that MOE had previously advanced."

*Id.* (brackets in original).

MOE appealed. In its first assignment of error, MOE contended that the trial court erred in denying its motions for summary judgment and for a directed verdict on the breach of contract claim.[2] *Id.* at 117-18. We first concluded that the trial court's denial of MOE's motion for summary judgment was not reviewable because it was not "based on a purely legal contention that does not require the establishment of any predicate facts." *Id.* at 117 (citing *Freeman v. Stuart*, 203 Or App 191, 194, 125 P3d 786 (2005)). We reasoned that, "[b]ecause the question raised by the motion for summary judgment here cannot be resolved without reference to the predicate fact that plaintiff had not completed replacement of the home within two years, * * * even if that predicate fact is undisputed, the ultimate issue is not purely legal." *Patton I*, 238 Or App at 117.

As to the denial of MOE's motion for directed verdict, we observed:

"Assuming, as MOE contends, that the claim was premature at the time it was filed because plaintiff had not yet completed construction of the home so as to trigger MOE's obligation under the policy to pay replacement costs, later events altered those circumstances."

*Id.* at 118. We pointed out that "the trial court allowed the complaint to be amended during trial, and the first amended complaint made new allegations, including that MOE had breached the policy by refusing to pay plaintiff the actual cost of replacing the destroyed home[,]" and that, "[a]t trial, plaintiff put on evidence of the actual cost of replacing the home." *Id.* Because a "motion for directed verdict is directed against the operative pleading and based on the evidence at trial, and our review is based on that same record[,]" we

---

[2] MOE did not assign error to the trial court's denial of its motion for summary judgment on the declaratory judgment claim, noting instead that the trial court's judgment did not mention plaintiff's claim for declaratory relief and that, therefore, that claim was deemed to have been dismissed with prejudice. *Patton I*, 238 Or App at 117 n 6.

thus concluded that the trial court did not err in denying the motion for directed verdict based on the original claim having been filed prematurely.[3] *Id.*

In its second assignment of error in *Patton I*, defendant challenged the trial court's legal conclusion that the policy had been amended and its consequent limitation of the scope of trial and exclusion of evidence. We described the challenged trial court rulings as

> "allowing plaintiff's motion *in limine* to limit the issue for trial to whether the new house is of 'like construction and use' to the house that burned; striking MOE's affirmative defenses based on plaintiff's failure to complete replacement of the home within two years of loss and before demanding payment from MOE; excluding evidence of the amount that plaintiff actually spent to build the house that burned; excluding evidence of plaintiff's failure to comply with policy provision; and, finally, granting plaintiff's motion for directed verdict on the breach of contract claim."

*Id.* at 119.

We agreed with MOE that the described rulings depended on the trial court's erroneous conclusion. But we declined to address whether such a conclusion by a trial court was impermissible, concluding instead that, as MOE argued, "to the extent that Smith's letters provided an interpretation of the policy, that interpretation was consistent with the policy's unambiguous terms." *Id.* at 119. We concluded that "the policy's provisions relating to the recovery of replacement costs are straightforward and not ambiguous" and that "the completion of construction is a condition for recovery of replacement costs." *Id.* at 120. And finally,

---

[3] In a footnote we also noted:

> "In support of this assignment, MOE also makes other arguments as to why the trial court erred in denying its motion for directed verdict—essentially the same arguments made in support of its summary judgment motion. However, those other arguments—which include the contention that MOE was not in breach of the policy because replacement cost benefits were not due until construction was complete and that no replacement costs benefits were due for repairs or replacement not completed within two years from the date of loss—were not argued below in support of MOE's motion for directed verdict, and we therefore will not consider them under this assignment of error as a basis for reversing the trial court's ruling."

*Patton I*, 238 Or App at 118 n 7.

in a passage on which the trial court on remand relied in granting defendant's motion for summary judgment, we made the following additional observations and conclusions:

"Smith's letters never promised that MOE could continue to pay replacement costs for expenses incurred more than two years from the date of loss. In fact, Smith warned plaintiff that

"'[MOE] is concerned that you are running out of time if you choose to rebuild your house. In addition to the rental value time limitation, there is also a two-year limitation in your policy for you to bring suit against [MOE] if you feel that the company has breached the policy in any way. As stated in my letter of September 18th, we are concerned that you may lose some of the benefits you are entitled to under your policy if you don't get started on the rebuilding immediately.'

"The trial court's mistaken conclusion that Smith promised that MOE would pay all replacement costs incurred for like construction and use—regardless of when they were incurred—led the trial court to mistakenly refuse to consider MOE's contention, raised by way of affirmative defense, that there was no breach of contract because, under the terms of the policy, construction had not been completed within two years from the date of loss.

"In summary, assuming, without deciding, that Smith's letters could have any bearing on the meaning of the policy, we have read them carefully, and we do not understand them to have altered the unambiguous terms of the policy in any respect. It is true, as plaintiff points out, that Smith told plaintiff that he could build the house that he wanted, with the builder of his choice, and that MOE would reimburse plaintiff for the costs to rebuild the house. However, Smith also consistently qualified those statements by reminding plaintiff that his right to replacement-cost coverage was subject to the conditions and terms of the policy, including the requirement that construction actually be completed and that MOE would pay only the lesser of the cost of replacing the house with one of like construction and use or the amount necessary to rebuild the same house. We conclude, therefore, that the trial court erred in concluding that Smith had interpreted the conditions and limitations on recovery of replacement costs to vary from the terms of the written policy. We further conclude that

the court committed corresponding errors in the several rulings that were dependent on that underlying conclusion, including granting plaintiff's motion for a directed verdict on the breach of contract claim, striking MOE's affirmative defenses, prohibiting MOE from arguing that MOE had not breached the policy because plaintiff had not completed replacement of the house within two years from the date of loss, and excluding the evidence that MOE offered to establish that plaintiff's actual replacement costs exceeded the amount necessary to rebuild the same house. Accordingly, we reverse the trial court's judgment for plaintiff on the breach of contract claim and remand for a new trial."

*Id.* at 122-24 (footnote omitted; brackets in original).[4]

On remand, MOE again sought summary judgment, this time limiting the basis of its motion to its argument that the terms of the insurance policy operated collectively to require completion of reconstruction before the end of the second year following the date of loss. MOE acknowledged that "the policy does not say *that* in just so many words[,]" but maintained that "that is the plain import of what it *does* say." (Emphasis in original.) According to MOE, moreover, our opinion in *Patton I* tacitly approved its interpretation of the terms of the policy. Plaintiff likewise reprised his argument that the plain language of the policy contained no such time limit and that, therefore, under *Bourrie*, he had a reasonable time to rebuild, even if recovery of the replacement cost was not available until such time as reconstruction was actually completed.

This time, the trial court granted defendant's motion. The court agreed with its argument that our decision in *Patton I* telegraphed our unstated agreement with its position. The court concluded that, based on our analysis of the trial court's initial treatment of Smith's letters to plaintiff, discussed above, we appeared "to have concluded that defendant's position as to the two-year replacement period was correct." According to the trial court, our recognition that Smith's admonitions to plaintiff were "consistent with the policy's unambiguous terms" is irreconcilable "with any

---

[4] Plaintiff petitioned the Supreme Court for review, seeking resolution, specifically, of the issue of whether the policy required completion of rebuilding within two years of the fire. As noted, the Supreme Court denied review.

position other than, as defendant argues, replacement must be completed within two years of the date of loss under this policy, absent extension or waiver."

We disagree. We conclude that nothing in Smith's letters, as summarized in *Patton I*, does anything but, in essence, restate the very terms of the policy on which this continuing dispute turns. Those letters do not contain any statement from Smith to the effect that reconstruction must be *completed* within two years of the date of loss. Rather, they express only that *recovery* of replacement costs will not occur until completion of reconstruction. For example, as the trial court on remand noted in its ruling granting defendant's motion for summary judgment, Smith warned plaintiff of the "two-year limitation in your policy for you to *bring suit* against [MOE] if you feel that the company has breached the policy in any way." *Id.* at 107 (emphasis added; brackets in original).

Such language gets MOE no closer to its proffered interpretation of the policy than do the original terms of the policy, which, as noted at the outset of this opinion, provide only that (i) MOE "will pay no more than the actual cash value of the damage unless * * * actual repair or replacement is complete" and, separately, that (ii) "[n]o action can be brought unless the policy provisions have been complied with and the action is started within two years after the date of loss." Elsewhere in the correspondence, Smith's admonitions are similarly unhelpful. In Smith's first letter, for example, Smith reminded plaintiff that "you actually have to make the repair or replacement to obtain the benefit of the replacement cost portion of your policy and [MOE] is not obligated to pay you until after repair or replacement is complete." *Id.* at 107.

Nor can MOE point to any language from the summary in *Patton I* of Smith's letters or our ultimate disposition in that case, based in part on those letters, that supports its argument any more than the letters themselves. It is true that, as the trial court on remand highlighted in its letter opinion granting defendant's motion for summary judgment, we concluded that "Smith's letters never promised that MOE could continue to pay replacement costs for

expenses incurred more than two years from the date of loss." *Id.* at 122. But that statement is not, as both defendant and the trial court on remand reason, equivalent to the opposite proposition—*i.e.*, that Smith's letters, and, thus, the policy, actually provide that there will be *no* payment for replacement costs for expenses incurred more than two years from the date of loss.

The same may be said for our holding in *Patton I* that the trial court's erroneus conclusion concerning the purported policy change

> "led the trial court to mistakenly refuse to consider MOE's contention, raised by way of affirmative defense, that there was no breach of contract because, under the terms of the policy, construction had not been completed within two years from the date of loss."

*Id.* at 123. Contrary to the reasoning of the trial court on remand, it does not automatically follow that MOE's contention was necessarily correct. It merely means that MOE's contention should have been heard; thus, we reinstated defendant's affirmative defenses and allowed defendant to pursue its theory that it had not breached the contract because, under the terms of the policy, construction had not been completed within two years from the date of loss. In other words, simply because we held that the initial trial court was wrong to agree with plaintiff's contention about the amendment of the policy does not mean that we agreed with defendant's interpretation of the policy. We conclude that the trial court erred in granting defendant's motion for summary judgment on the basis that our decision in *Patton I* compelled such an outcome.

Because the parties have fully briefed the substantive issue of the correct interpretation of the terms of the policy, we now turn to address the merits of that issue. We set out the relevant legal standard in *Patton I*:

> "The interpretation of an insurance policy is a matter of law, and our objective in construing the policy is to determine the intent of the parties. * * * [T]he first step is to examine the text of the policy to determine whether it is ambiguous. If it is not, the policy is interpreted in accordance with its unambiguous terms. Accordingly, the court

begins with the wording of the policy, applying any definitions that are supplied by the policy itself and otherwise presuming that words have their plain, ordinary meanings. If the wording of the policy is susceptible to more than one plausible interpretation, we examine the disputed terms in the context of the policy as a whole. If, after such an examination, the ambiguity persists, we construe the policy against the drafter—in this case, MOE."

*Id.* at 119-20 (internal citations and quotation marks omitted). Applying the foregoing standard, we conclude that, under normal contract principles, as previously applied by this court to an almost identical dispute in *Bourrie*, the unambiguous terms of the policy do not require that reconstruction be complete within two years after the date of the loss and that, therefore, plaintiff had a reasonable time in which to rebuild.

In *Patton I*, the trial court cited *Bourrie* in denying MOE's first motion for summary judgment. 238 Or App at 111-12. We find *Bourrie* to be dispositive. There, after the plaintiff's home was destroyed by fire, a dispute arose between the plaintiff and his insurer. The defendant-insurer denied the plaintiff compensation for the replacement cost because the plaintiff failed to complete replacement within 180 days, which the defendant alleged was a condition of the insurance contract. *Bourrie*, 75 Or App at 243. The plaintiff sued, seeking, *inter alia*, a declaration as to whether or not the policy required him to complete replacement within 180 days. *Id.*

The relevant provisions of the policy in *Bourrie* provided that (i) the defendant would "pay no more than the actual cash value of the damage until actual repair or replacement is completed" and that (ii) the insured could "make claim within 180 days after loss for any additional liability on a replacement cost basis." *Id.* at 245. The trial court agreed with the defendant's argument that "the insured could not 'make claim' for the additional liability until the replacement had been completed and the ultimate costs liquidated and interpreted the two sections to require plaintiff both to complete the replacement and to 'make claim' within 180 days." *Id.* at 246. The plaintiff argued that "he was required only to notify defendant within 180 days of his

intention to replace the building and its contents and then to complete the replacement within a reasonable time." *Id.* We agreed with the plaintiff and reversed the trial court's ruling on that issue.

In so doing, we discussed at length the Supreme Court's earlier decision in *Higgins v. Insurance Co. of N. America*, 256 Or 151, 469 P2d 766 (1970). In *Higgins*, the court examined the origin and purpose of replacement cost insurance. 256 Or at 162-67. Relatedly, the court discussed typical limitations on recovery under replacement cost provisions. *Id.* at 163-66. Citing to numerous authorities, the court made the following observations:

> "It appears that replacement cost insurance has been written only under very definite limitations. The basic limitation is that the insured collects on this new for old basis only if the property is repaired or replaced. * * *

> "There is to be no recovery of the part of the loss which exceeds the actual cash value of the damaged part *unless and until actual repair or replacement is completed.* In other words, repair or replacement is *prerequisite* to recovery under the extension. The insured can submit a claim for *actual cash value* when he chooses and collect any *additional amount* he may have coming under the Replacement Cost extension subject to a requirement that the additional claim be made *within 180 days* after the loss. * * *

> "* * * * *

> "* * * In the usual course, liability under the policy accrues on an actual cash value basis until repair or replacement has actually been effected. This means that if the property is not repaired or replaced, the only liability of the company will be on an actual cash value basis. <u>Some companies specify a time limit within which repair or replacement must be completed. It is usual to provide that repairs or replacements shall be completed with due diligence and dispatch, ordinarily within 12 months.</u> * * *

> "* * * As is usual with replacement-cost coverage, the contract provides that the company shall not be liable for any loss until the actual repair or replacement is completed."

*Id.* at 163-64 (internal quotation marks omitted; italics in original; underlining added).

Based on the discussion in *Higgins*—specifically, the passage underlined above—we concluded in *Bourrie* that, "[i]f defendant had intended to require repair or replacement within a specific period of time, it would have been a simple matter to so require in *clear* language." *Bourrie*, 75 Or App at 246-47 (emphasis added). Because we concluded that the "[d]efendant did not do so," "we construe[d] the ambiguity in the policy against the drafter." *Id.* at 247. We therefore held that the trial court erred when it concluded that the terms of the policy required the plaintiff "both to complete the replacement and to 'make claim' within 180 days." *Id.* at 246. Instead, we concluded that, because the contract was silent as to the time within which replacement must be completed, the law implied a requirement that it be done within a reasonable time. *Id.* (citing *Taylor et ux. v. Wells et ux.*, 188 Or 648, 655, 217 P2d 236 (1950)).

We reach the same conclusion here for the same reasons. The operative text of the policy in *Bourrie* is nearly identical to the text of the policy here. MOE's policy does not specify an *express* limit—*e.g.*, "12 months"—within which repair or replacement must be completed, as the court in *Higgins* indicated insurers would where such limitation was sought and as the court in *Bourrie* concluded would have been a simple matter to include.

To be sure, as defendant here emphasizes, the policy in *Bourrie* did not contain a no-action clause like the one in the policy at issue here. But that fact does not affect our analysis. That clause merely states that "[n]o action can be brought unless the policy provisions have been complied with and the action is started within two years after the date of loss." Defendant reiterates that, *in conjunction* with the separate provision that replacement cost benefits may not be collected until replacement is complete, the no-action clause functions to effect an implied two-year window within which replacement must be completed. There are at least two problems with that argument.

First, defendant's reliance on the no-action clause requires an inference in the absence of an express limitation on the time within which plaintiff had to rebuild his house. A limitation that exists only impliedly and depends upon

two degrees of inference to carry the import that defendant asks us to ascribe to it falls too short of the kind of "clear" and specific, express time limit that we have recognized and required in the aforementioned cases. Second, defendant's argument, and the language of the no-action clause itself, still begs the question whether completion of replacement within two years after the loss is, in fact, one of the policy provisions that must be complied with before an action can be brought. In other words, it may well be that the terms of the no-action clause prohibit plaintiff from bringing suit if he had not complied with the policy provisions. But that does not by itself establish that those provisions actually require plaintiff to complete reconstruction within two years of the date of loss. Defendant's argument to the contrary is circular.

We thus see no substantive distinction between the policy at issue here and the one in *Bourrie*. Accordingly, the trial court erred by granting defendant's motion for summary judgment.

Reversed and remanded.