ORTEGA, P. J.
*268 This insurance coverage case is before us for a third time. In the first appeal, we reversed a judgment that awarded plaintiff damages on his breach of contract claim, and remanded for a new trial. Patton v. Mutual of Enumclaw Ins. Co. , 238 Or. App. 101, 242 P.3d 624 (2010), rev. den. , 349 Or. 654, 249 P.3d 542 (2011) ( Patton I ). In the second appeal, we reversed and remanded the case again because the trial court erred in granting a motion for summary judgment by defendant Mutual of Enumclaw Insurance Company (MOE). Patton v. Mutual of Enumclaw Ins. Co. , 266 Or. App. 154, 337 P.3d 874 (2014), rev. den. , 337 Or. 874 (2015) ( Patton II ). On that second remand, the case proceeded to trial, and the jury returned a verdict in favor of plaintiff, awarding him $ 2.556 million in damages. The court entered a judgment awarding damages in that amount, along with $ 1.023 million in prejudgment interest and $ 1.382 million in attorney fees.
MOE appeals and raises four assignments of error, all of which challenge the award of prejudgment interest and attorney fees. We reject, without written discussion, MOE's third and fourth assignments of error-that is, its challenges to the court's award of attorney fees and costs-and write only to address MOE's first two assignments of error. MOE first asserts that the trial court erred in ruling that issue preclusion barred it from challenging plaintiff's entitlement to prejudgment interest. Second, MOE argues that the trial court erred in concluding that plaintiff was entitled to prejudgment interest under ORS 82.010(1)(a) because the amount owed and the date from which interest should run were not easily ascertainable. We agree, based on the circumstances of this case, that the trial court erroneously applied the doctrine of issue preclusion. Further, in reviewing the court's award of prejudgment interest for legal error, Tasaki v. Moriarty , 233 Or. App. 51, 55, 225 P.3d 68 (2009), we conclude that the trial court lacked a basis on this record for an award of prejudgment interest because the record does not establish a readily ascertainable date from which such interest should run. Accordingly, we reverse the award of prejudgment interest and otherwise affirm the judgment.
*269 We offer a limited description of the relevant procedural and background facts for purposes of this appeal, but a more detailed recitation of the facts can be found in Patton I and Patton II . Patton I , 238 Or. App. at 101, 242 P.3d 624 ; Patton II , 266 Or. App. at 154, 337 P.3d 874.
Plaintiff's house burned down on November 8, 2001. Patton I , 238 Or. App. at 105, 242 P.3d 624. He notified MOE that he intended to take advantage of the policy's replacement cost endorsement and that he was considering rebuilding. Id. That endorsement stated, in part, that, in the event of loss, MOE agreed to pay
"not more than the lesser of:
"1. The replacement cost of that part of the building damaged for like construction and use on the same premises; or
"2. The necessary amount required to repair or replace the damaged building."
Id. at 104, 242 P.3d 624. The policy further explained how covered losses were to be settled:
"(4) We will pay no more than the actual cash value of the damage unless:
"(a) actual repair or replacement is complete; or
"(b) the cost to repair or replace the damage is both:
"(i) less than 5% of the amount of insurance in this policy on the building; and *444 "(ii) less than $ 2,500.
"(5) You may disregard the replacement cost settlement provisions and make claim under this policy for loss or damage to buildings on an actual cash value basis."
Id.
Plaintiff received several replacement cost estimates-between $ 1.544 million and $3.858 million-but MOE reminded plaintiff that, under the policy, he could not recover the replacement cost until the reconstruction was complete and that plaintiff had two years from the date of loss to bring action against MOE. Id. at 105-06, 242 P.3d 624. Nevertheless, *270 MOE paid plaintiff $ 1.14 million on February 27, 2003-in addition to the $ 600,000 that MOE paid plaintiff after he reported the fire-and notified plaintiff that if the replacement cost exceeded that amount after reconstruction was completed, it would reevaluate plaintiff's claim to determine if MOE should pay the difference based on the terms of the policy. Id. at 109, 242 P.3d 624.
Plaintiff entered into a construction contract to rebuild the home for an estimated cost of $ 3.8 million and, right before the second anniversary of the fire, he filed a complaint alleging, among other things, that MOE breached the contract when it failed to pay the replacement cost beyond the $ 1.7 million that MOE had already advanced. Id. at 110, 242 P.3d 624. Because construction had not yet begun, the court put the case into abatement. Id. at 112, 242 P.3d 624. Two years later, the case proceeded to trial even though plaintiff had not fully completed the construction. Id. In ruling on some of the parties' pretrial motions, the court limited trial "to the question of whether the new house was of like construction and use [and] *** exclude[d] evidence of the amount that plaintiff had paid for the house that burned[.]" Id .
During the trial, plaintiff sought a directed verdict, arguing that there " 'is no evidence in the record that this house is not like construction and use,' " and the court allowed the motion after concluding that the replacement cost endorsement in the policy had been modified by letters MOE sent to plaintiff. Id. at 116, 242 P.3d 624. The court entered a judgment in favor of plaintiff for an award of $ 3.23 million, the amount that plaintiff spent to rebuild the house at that time, less the $ 1.7 million that MOE had already advanced, and included an award of prejudgment interest and attorney fees and costs. Id. at 116-17, 242 P.3d 624. MOE appealed, raising several assignments of error, but only challenged the damage award. In reversing and remanding this case, we concluded that
"the policy's provisions relating to the recovery of replacement costs are straightforward and not ambiguous. *** Thus, the completion of construction is a condition for recovery of replacement costs."
Id. at 120, 242 P.3d 624.
*271 On remand, MOE filed a motion for summary judgment, arguing that plaintiff's claim was untimely because " 'the terms of the insurance policy operated collectively to require completion of reconstruction before the end of the second year following the date of loss.' " Patton II , 266 Or. App. at 164, 337 P.3d 874. MOE acknowledged that the policy did not specifically " 'say that in *** so many words,' " but maintained that " 'that is the plain import of what it does say.' " Id. (Emphases in original.) The court granted MOE's motion, and, on appeal, we reversed and remanded, concluding that "MOE's policy does not specify an express limit *** within which repair or replacement must be completed[.]" Id. at 169, 337 P.3d 874. (Emphasis in original.) On remand, the case proceeded to trial where the jury was asked to determine the cost to rebuild the same house that burned.
At the second trial, plaintiff asserted that the cost to rebuild the same house could not be known but maintained that it would have cost more than he spent to rebuild the home of like construction and use-that is, more than the $ 3.23 million that plaintiff spent. One of plaintiff's witnesses stated that he could not "put a dollar figure on the cost to rebuild the [same] house." Another witness for plaintiff concluded that no one "can look at the materials available [to rebuild the house] *** and actually come up with a number to reconstruct the same house[;] it would always be wrong." In contrast, defendant presented evidence that the estimated cost to *445 rebuild the exact same house was $ 1.88 million and, therefore, the cost to rebuild or replace the same home was less than the cost of rebuilding one of like construction.
The jury concluded that "the necessary amount required to replace the damaged house [would not] have been equal to or greater than the [$ 3.23 million] that [plaintiff] spent to build the house that was actually built." Instead, the jury determined that the amount to rebuild the same house would have been $ 2.556 million. Plaintiff prepared and filed a proposed judgment, which included an award of damages for $ 816,831 (the difference between what the jury awarded and what MOE had already paid) and an award of prejudgment interest of $ 1.23 million, dating back to February 27, 2003.
*272 To provide context for the parties' contentions in this appeal from the ensuing judgment, we pause briefly to explain how prejudgment interest is awarded. " '[I]n the absence of an agreement to pay interest, interest can be recovered only in those circumstances authorized by statute.' " Strawn v. Farmers Ins. Co. , 353 Or. 210, 239, 297 P.3d 439 (2013) (quoting Dowling v. Albany Planing Mill , 238 Or. 425, 431, 395 P.2d 143 (1964) ). Here, the trial court relied on ORS 82.010(1)(a), which authorizes an award of interest on "all moneys after they become due[.]" Whether a court can award prejudgment interest "usually reduces to whether the amount due was readily ascertainable." Strawn , 353 Or. at 239, 297 P.3d 439. That generally means that prejudgment interest is only awarded when "the exact amount is ascertainable or easily ascertainable by simple computation or by reference to generally recognized standards * * * and where the time from which interest should run is also easily ascertainable." Strader v. Grange Mutual Ins. Co. , 179 Or. App. 329, 338, 39 P.3d 903, rev. den. , 334 Or. 190, 47 P.3d 485 (2002).
Returning to the conclusion of the second trial, after plaintiff filed the proposed judgment, MOE objected in a written motion, arguing that plaintiff was not entitled to prejudgment interest. MOE asserted that, "because the exact amount of damages [was] not easily ascertainable by simple computation and because the time from which interest should run is not easily ascertainable, plaintiff was not entitled to an award of prejudgment interest." In doing so, MOE invoked the "Loss Payment" provision of the policy to argue that the contract provided the basis to determine when money becomes due for prejudgment interest calculations. That provision states that
"(10) *** [l]oss will be payable 60 days after [MOE] receives your proof of loss and:
"(a) reach[es] an agreement with you;
"(b) there is an entry of final judgment; or
"(c) there is a filing of an appraisal award with [MOE]."
In other words, MOE contended that, based on "the terms of the contract, no monies became due and owing until entry of *273 final judgment" and, therefore, the "contract did not authorize an award of prejudgment interest." Alternatively, MOE argued that plaintiff could not be entitled to prejudgment interest because he failed to specifically plead foundational facts-that is, plaintiff failed to plead the amount owed or the date interest became due.
Plaintiff responded by arguing that MOE was precluded from challenging the award of prejudgment interest because it had a chance to do so in 2006 when the case was appealed after the first trial. Alternatively, plaintiff argued that, as of February 27, 2003 (the last time that MOE tendered payment to plaintiff to begin construction on his replacement home), the amount due and when interest would run were easily ascertainable even though the exact amount was still in dispute. Additionally, plaintiff argued that, by pleading that he "is entitled to an award of interest at the legal rate upon the amount owed to plaintiff under the Policy, from the date that it is due until it is paid," he satisfied the pleading requirement.
At the hearing on the motion, MOE argued that issue preclusion did not apply because the issues from the two trials were not "identical." However, the court disagreed and concluded that MOE was "foreclosed by issue preclusion from asserting [that] *** prejudgment interest doesn't apply." The court further *446 concluded that the prejudgment interest was appropriate "for reasons set forth in plaintiff's written submission" and awarded $ 1.023 million in prejudgment interest-dating back to February 27, 2003, up until the judgment in the second trial in 2016. This appeal followed.
In challenging the trial court's application of issue preclusion in its first assignment of error, MOE reprises its argument from below. Specifically, MOE asserts that, because the measure of damages was different between the first and second trial, the prejudgment interest issue was not identical and, therefore, issue preclusion did not apply. After reviewing the court's application of issue preclusion for errors of law, City of Portland v. Huffman , 264 Or. App. 312, 315, 331 P.3d 1105 (2014), we agree that issue preclusion does not apply to foreclose MOE's arguments.
*274 Under the doctrine of issue preclusion, "[i]f one tribunal has decided an issue, the decision on that issue may preclude relitigation of the issue in another proceeding if five requirements are met[.]" Nelson v. Emerald People's Utility Dist. , 318 Or. 99, 104, 862 P.2d 1293 (1993). One of those requirements is that the "issue in the two proceedings is identical," id ., and generally the party invoking issue preclusion "bears the responsibility of placing into evidence the prior judgment and sufficient portions of the record *** to enable the court to reach that conclusion with the requisite degree of certainty." Barackman v. Anderson , 214 Or. App. 660, 666, 167 P.3d 994 (2007), rev. den. , 344 Or. 401, 182 P.3d 200 (2008). That requirement has not been met in this case.
Whether or not plaintiff was entitled to prejudgment interest depends on when the amount owed to him became "due." See ORS 82.010(1)(a). That legal and factual question differed between the first and second trial; in the first trial, the court determined that plaintiff rebuilt a home of like construction and use and concluded that the amount owed to him was $ 3.23 million, the basis of the award of prejudgment interest, whereas in the second trial, the jury determined that the cost to rebuild the same home (an entirely different determination) would have been $ 2.556 million. In other words, before the jury returned a verdict in the second trial, the court's determination of prejudgment interest had been solely based on the cost to rebuild a home of like construction and use and, consequently, the facts and the legal question necessary to determine when that $ 3.23 million became due for an award of prejudgment interest, although similar, were not "identical" to the prejudgment interest determination in the second trial. Therefore, without more evidence to support a conclusion that the issues from the first and second trial were "identical," we conclude that the trial court erred in applying the doctrine of issue preclusion.
We turn to MOE's second assignment of error, i.e. , its challenge to the prejudgment interest award. As we understand MOE's argument on appeal, it disputes that both the amount due and the date from which interest ran were ascertainable. First, in MOE's view, the exact amount was not due until the jury returned a verdict because, up until that point, it did not know how the losses were to be *275 calculated and, as a result, the amount was not ascertainable. Second, MOE contends that the time from which interest should run was not ascertainable because the "loss payable" clause in the policy dictated when interest began to run-that is, only after final judgment was entered in the second trial. MOE also argues that, because we stated in Patton I that replacement of the house is a condition precedent to recovering replacement-cost benefits, prejudgment interest cannot run from February 27, 2003, the date the trial court chose. Alternatively, MOE contends that plaintiff cannot be entitled to prejudgment interest because plaintiff failed to plead the exact amount and the date that amount was due.
In response, plaintiff appears to argue that the amount due was readily ascertainable because both parties had the ability to determine the replacement cost under the policy given the amount that plaintiff spent to rebuild the home of like construction.[1] In other *447 words, plaintiff contends that, even if the exact amount was unknown until the second trial, the amount was still ascertainable when the parties had a basis to determine the replacement cost. Further, plaintiff asserts that the policy does not dictate when the amount owed becomes due for purposes of calculating prejudgment interest given the fact that the court relied on ORS 82.010(1)(a) to make that determination. Additionally, plaintiff contends that, because MOE "did not articulate any problem with the date selected, nor suggest any alternative," February 27, 2003 is the date from which interest should run. And, in response to MOE's pleading challenge, plaintiff contends that MOE "never voiced any prejudice stemming from the absence of these specific allegations in the complaint," and that plaintiff thus met the pleading requirement. We conclude that the trial court lacked a basis on this record to determine the date at which prejudgment interest would accrue.
As previously stated, a trial court awards prejudgment interest when "the exact amount is ascertainable or easily ascertainable *** and where the time from which *276 interest should run is also easily ascertainable." Strader , 179 Or. App. at 338, 39 P.3d 903. However, even when the exact amount of damages is "not ascertainable until issues of fact have been decided [by the jury], prejudgment interest is proper." Id. (internal quotation marks omitted). In other words, " '[a]lthough there are questions of fact about the amounts owed, that does not mean that defendant did not owe sums certain at dates certain.' " Farhang v. Kariminaser , 230 Or. App. 554, 557, 217 P.3d 218, adh'd to on recons. , 232 Or. App. 353, 222 P.3d 712 (2009) (quoting Hazelwood Water Dist. v. First Union Management , 78 Or. App. 226, 231, 715 P.2d 498 (1986) ).
Here, as plaintiff correctly points out, the fact that the exact amount owed to him was not pleaded or definitively established until the jury returned its verdict does not bar a prejudgment interest award. As we explained in Strader and as relevant to this dispute, the fact that the amount plaintiff pleaded differed from the amounts both parties presented at trial, and that both those amounts differed from what the jury decided, does not mean that the amount due was not readily ascertainable for these purposes. See Strader , 179 Or. App. at 339, 39 P.3d 903. Once the jury determined that the cost to rebuild the same home was less than the replacement cost of a home of like construction, prejudgment interest on that award was appropriate. See id. at 339-40, 39 P.3d 903 (concluding that once the jury resolved the factual dispute and awarded plaintiff damages on his breach of contract claim, an award of prejudgment interest was appropriate); see also Miller v. C. C. Meisel Co., Inc. , 183 Or. App. 148, 182, 51 P.3d 650 (2002) (concluding that trial court did not err in awarding prejudgment interest even though the amount owed was in dispute because "it was always within the ability of the parties to ascertain the amount of compensation owed under the agreement").
However, the time from which interest should run is not easily ascertainable on the record before us. See Farhang , 230 Or. App. at 558, 217 P.3d 218 (noting that in the absence of a jury determination of the factual issue regarding when interest should accrue, there must be sufficient evidence in the record designated on appeal for us to conduct *277 meaningful review of whether the trial court erred in its resolution of that issue). Here, plaintiff contends that MOE's failure to "articulate any problem with" February 27, 2003, or to "suggest any alternative" date forecloses its challenge to the date that prejudgment interest should run. To the contrary, MOE's only burden as defendant is to demonstrate that a factual dispute existed about the date that interest should run, a dispute that the jury was not asked to resolve because it arose only after plaintiff prepared the proposed judgment. See Farhang , 232 Or. App. at 356, 222 P.3d 712 (explaining that, where interest began to accrue when the defendant made his last payment to the plaintiff but the jury was not asked to resolve that disputed issue, and the appellate record did not demonstrate a clear resolution to it, we lacked a basis to conclude *448 that the trial court erred in declining to award prejudgment interest). In this case, the burden was on plaintiff, as the party requesting an award of prejudgment interest, to provide evidence to support the trial court's finding that interest should accrue from February 27, 2003, the date of MOE's last voluntary payment to plaintiff-i.e. , that an award of prejudgment interest was readily ascertainable as of that date. See generally Farhang , 230 Or. App. at 556, 217 P.3d 218. Here, that date was simply included in the proposed final judgment and accepted by the trial court without explanation, although MOE contested it and proposed alternative legal theories for when any interest would accrue, and there is no other evidence (nor, indeed, any legal support) suggesting the date the trial court chose was "the time from which interest should run." Strader , 179 Or. App. at 338, 39 P.3d 903.
With that in mind, we cannot determine from this record when "the time from which interest should run is *** easily ascertainable." Id . Therefore, we reverse the award of prejudgment interest.
Award of prejudgment interest reversed; otherwise affirmed.

We reject without written discussion plaintiff's arguments that MOE failed to preserve its arguments regarding prejudgment interest.